2010 ND 29

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Elijah ADDAI, Defendant and Appellant.**

**No. 20090079.**

Supreme Court of North Dakota.

Feb. 17, 2010.

Rehearing Denied March 16, 2010.

Leah Jo Viste, Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Ross Wheeler Brandborg, Fargo, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1]   Elijah Addai appeals from a criminal judgment entered after a jury found him guilty of murder.  We conclude the district court did not err in denying Addai's motion to suppress evidence of the stop, the eyewitness identification procedure used in this case was not unnecessarily suggestive and the identification was reliable, the court did not abuse its discretion by denying Addai's motion to dismiss for discovery violations, and competent evidence supports the jury's verdict.  We affirm the judgment.

I

[¶ 2]   In the early morning hours of Sunday, August 19, 2007, a group of people gathered at an apartment in south Fargo, including Addai; Addai's friend, Semereab Tesafaye;  David Delonais ("Delonais");  and  Eric  Delonais, Delonais's cousin. There was tension at the gathering between Tesafaye and Eric Delonais.  When Delonais and Eric Delonais left the apartment, Addai and Tesafaye followed and a fight  broke  out  behind  the  apartment building.  Addai, Tesafaye, and Delonais were involved in the altercation and had knives.  At some point during the altercation, Delonais stabbed Tesafaye in the head, and other individuals from the party later found him lying behind the apartment building in a pool of blood.  There was also evidence Tesafaye and Addai may have stabbed Delonais during the fight. Delonais and Eric Delonais attempted to run away from the scene of the fight, but they became separated and witnesses saw Addai following Delonais.

[¶ 3]   Two newspaper carriers, Roslynn Bolgrean and Mary Albertson, were deliv-

ering newspapers approximately one block away from the apartment building at the time of the altercation. They heard footsteps and a commotion and saw two men running down the street toward them. They testified one of the men was black, wearing a light blue shirt with white numbers on the shirt and a white scarf on his head, and he was chasing the other man, who had a lighter complexion. The man being chased was later identified as Delonais, and Albertson and Bolgrean identified Addai as the man who was chasing Delonais. Albertson testified she heard Addai say, "I'm going to cut you, I'm going to kill you," and saw Addai swinging something at Delonais. Albertson testified she was standing in the driveway of a house when Delonais ran up to her and was close enough she could have touched him. The two men began struggling with each other by Albertson. Albertson testified Delonais was panicking and asked her to help him, and then Addai stabbed Delonais in his side, although she admitted she did not see a knife. Bolgrean testified Addai jumped on Delonais, tousled with him, and then ran off. Albertson testified Delonais said he had been stabbed, blood was coming out of his side, and he asked her to help him. Albertson and Bolgrean called 911.

[¶ 4] Delonais was taken to a hospital, where he died from his injuries, including potentially lethal stab wounds to his chest and in his kidney area on the lower right part of his back. There was evidence the injury to his kidney area was the more serious injury, hitting a major artery, and would have caused Delonais to lose blood very quickly.

[¶ 5] At approximately 5:48 a.m., Fargo Police officers were dispatched after they received a call about the fight outside the apartment building. While officers were responding to the fight call, dispatch notified them there was a second call about a stabbing approximately one block from the fight and a black male was seen running from the location of the stabbing. While driving to the location of the stabbing, Officer DaLee Wilkinson observed a vehicle "driving strangely," make a U-turn, and drive quickly through the parking lot of a private elementary school. The parking lot was located in the block between the addresses given for the fight at the apartment and the location of the stabbing. Wilkinson observed a black male wearing a blue jersey in the passenger seat of the vehicle. Wilkinson radioed Sergeant Michael Bernier, who was following her, informing him that the passenger in the vehicle was black.

[¶ 6] Bernier observed the vehicle in the parking lot and noted there was a black male in the vehicle's passenger seat, who appeared to have been running and was under a lot of stress because he was having difficulty breathing and was rocking his body back and forth as if trying to catch his breath. The vehicle stopped in the parking lot and Bernier initiated a stop of the vehicle. Bernier testified the stop occurred within minutes of the dispatch regarding the stabbing and there were no other vehicles in the area. Bernier testified he believed the stabbing suspect was a black male fleeing the scene on foot at the time he stopped the vehicle.

[¶ 7] Bernier ordered the passenger out of the vehicle and noted the passenger's lip was bleeding and there was blood on his jeans and shirt. Bernier placed the passenger in handcuffs, asked for his name, searched him for weapons, and advised him of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The passenger was identified as Addai. After the vehicle was stopped, dispatch radioed that witnesses reported the stabbing suspect was wearing a light blue jersey-type shirt. Addai was

wearing a light blue jersey-type shirt with white numbers on the shirt. Addai was handcuffed behind his back and placed in the back of a patrol vehicle.

[¶ 8] Albertson and Bolgrean went to the scene of the stop. Albertson testified that when they arrived at the scene of the stop, they immediately recognized Addai as the man who had stabbed Delonais, and they told an officer right away. Bernier testified Bolgrean and Albertson immediately pointed to the patrol vehicle and said the man in the back seat was the one who stabbed Delonais. Bernier testified Albertson and Bolgrean then agreed to identify the man in the patrol vehicle if he did not face them. As Addai was removed from the backseat of the vehicle his face was briefly visible. Albertson and Bolgrean identified Addai as the man who stabbed Delonais. Albertson and Bolgrean testified they recognized the man because of the clothing he was wearing, he was black, and his size and age matched. Albertson and Bolgrean testified the identification occurred within fifteen minutes to an hour of the stabbing.

[¶ 9] Addai was taken into custody. At the time of his arrest, there was blood on his hands, and swabs of the blood were taken. A DNA test was performed on the samples, and the results established the blood belonged to Delonais. During the investigation law enforcement recovered at least six knives, including a knife located in the parking lot where Addai was arrested and one in the vehicle. The knife found in the parking lot was analyzed for DNA, and the results established there was blood on the knife belonging to Delonais.

[¶ 10] On August 20, 2007, Addai was charged with murdering Delonais in violation of N.D.C.C. § 12.1–16–01(1)(a), a class AA felony. Addai moved to suppress the evidence seized during the stop of the vehicle, arguing the officer did not have rea-sonable suspicion to stop the vehicle. Addai also moved to prohibit any testimony about the showup identification or any in-court identifications by Bolgrean and Albertson, arguing the initial identification was unnecessarily suggestive and unreliable. The district court denied his motions.

[¶ 11] Addai requested discovery in August 2007, and the State disclosed evidence in response. In September 2008, approximately one week before the trial was scheduled to begin, the State provided Addai with numerous police reports that had not previously been provided to him. Addai moved for dismissal. During a hearing on Addai's motion, he agreed to waive his right to a speedy trial to allow his attorney to review the materials. The district court denied Addai's motion, continued the trial for one month, and ordered the State to provide the defense with a copy of all the evidence in its possession, documenting what was on each disc and what it did and did not send to the defense. On October 21, 2008, Addai requested the court reconsider his previous motion to dismiss. The court later denied this motion.

[¶ 12] On October 28, 2008, four days before the trial was scheduled to begin, the State disclosed some pictures that had not been disclosed to the defense before. The pictures included one of a knife described as a tanto knife. The knife allegedly belonged to Tesafaye, and the picture showed the knife had blood on the blade, which was later determined to be Delonais's blood, and blood on the handle, which was later determined to be Tesafaye's blood. Addai moved to dismiss the case and suppress the evidence because of the late disclosure of this evidence, arguing the State's failure to follow the discovery rules and disclose the picture of the knife violated his constitutional rights and placed him at an unfair disadvantage. Af-

ter a hearing, the court denied the motion to dismiss, but ordered a continuance to allow the defense to get DNA analysis of the knife and ordered the pictures be suppressed.

[¶ 13] After a jury trial, Addai was found guilty of murdering Delonais. Addai was sentenced to life in prison with the possibility of parole.

[¶ 14] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal from the criminal judgment is timely under N.D.R.App.P. 4(b), and this Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 29–28–06.

## II

[¶ 15] Addai argues the stop of the vehicle was unlawful because there was not reasonable and articulable suspicion to support the stop. Addai contends the stop of the vehicle was based solely on his race, and race alone is an unconstitutional basis for an investigative stop.

[¶ 16] In reviewing a motion to suppress evidence, "[w]e will affirm a district court's decision if 'there is sufficient competent evidence fairly capable of supporting the [district] court's findings, and the decision is not contrary to the manifest weight of the evidence.'" *State v. Smith,* 2005 ND 21, ¶ 11, 691 N.W.2d 203 (quoting *City of Fargo v. Thompson,* 520 N.W.2d 578, 581 (N.D.1994)). We defer to the district court's findings of fact, resolve conflicts in testimony in favor of affirmance, and evaluate the evidence to determine whether it supports the findings of fact. *Smith,* at ¶ 11. "Questions of law and the ultimate conclusion about whether the facts support a reasonable and articulable suspicion are fully reviewable on appeal." *Id.*

[¶ 17] Under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the North Dakota Constitution, all searches and seizures must be reasonable. A stop, which temporarily restrains a person's freedom, is a seizure within the meaning of the Fourth Amendment. *Smith,* 2005 ND 21, ¶ 12, 691 N.W.2d 203. During a stop of a vehicle every person in the vehicle is seized, and therefore a passenger in the vehicle may challenge the constitutionality of the stop. *Brendlin v. California,* 551 U.S. 249, 254–59, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007).

[¶ 18] An officer must have a reasonable and articulable suspicion that a law has been or is being violated to stop a vehicle for investigative purposes. *State v. Corum,* 2003 ND 89, ¶ 10, 663 N.W.2d 151. To decide whether a reasonable and articulable suspicion exists, we apply an objective standard, considering the totality of the circumstances, and determine whether "a reasonable person in the officer's position would be justified by some objective manifestation to believe the defendant was, or was about to be, engaged in unlawful activity." *Id.* An officer must have more than a "mere hunch," but we do not require the officer to isolate a single factor that alone signals a potential violation of the law. *Id.* at ¶¶ 10–11. "When assessing reasonableness, we examine all of the information known to the officer at the time of the stop, and we consider inferences and deductions an investigating officer would make which may elude a layperson." *Id.* at ¶ 11.

[¶ 19] The district court denied Addai's motion to suppress any evidence seized as a result of the stop. The court found there was not reasonable and articulable suspicion to stop the vehicle, but found the stop was reasonable to "freeze" the scene.

[¶ 20] Addai argues he was stopped only because he was the first black male the officer came in contact with near the crime scene and he was acting nervous. He contends the officer engaged in selective enforcement of the law based on race, and his proximity to the crime and nervousness alone are not sufficient for reasonable suspicion. We do not isolate each factor and individually consider whether it is sufficient; rather, we consider whether all of the circumstances viewed together create reasonable suspicion. *Geiger v. Backes*, 444 N.W.2d 692, 693 (N.D.1989). In this case, Addai's race was not the sole basis for stopping the vehicle.

[¶ 21] The district court found the officers were initially dispatched to the location of the fight outside of the apartment building at approximately 5:48 a.m. on Sunday, August 19, 2007. While responding to the initial call, dispatch notified the officers there was a second call about a stabbing one block from the location of the fight. The officers were informed a black male was seen running from the location of the stabbing. Wilkinson and Bernier observed a black male passenger in a vehicle in the parking lot of a private elementary school located between the locations of the fight and the stabbing incidents. Wilkinson testified she observed the vehicle "driving strangely." Bernier testified the vehicle was driving at a high rate of speed, the passenger was rocking back and forth as if he was trying to catch his breath, and the vehicle stopped in the parking lot. Bernier testified he stopped the vehicle within minutes of receiving the information from dispatch about the stabbing. Bernier testified he stopped the vehicle because of its proximity to the stabbing, it was six in the morning, there were no other vehicles in the area, and the black male in the passenger seat appeared to be under a great deal of stress.

[¶ 22] Officers are not required to point to a single factor that would indicate a potential violation of the law, but should consider the totality of the circumstances, including inferences and deductions drawn from their training and experience, to determine whether the circumstances create a reasonable suspicion of criminal activity. *Corum*, 2003 ND 89, ¶ 11, 663 N.W.2d 151. Here, the stop occurred in the early morning hours on a Sunday morning within minutes of the fight and stabbing incidents being reported. Criminal activity had been reported in the area. The vehicle was located in a private elementary school parking lot and was not merely passing through the area. There were no other vehicles in the area at the time. The fight and stabbing incidents occurred a block away from each other, and the officers observed the vehicle located in between the two locations. Dispatch notified the officers a black male was seen leaving the scene of the stabbing incident. Both officers observed a black male in the passenger seat who matched the description of the stabbing suspect, and Bernier noted the man appeared to be under a lot of stress and was having difficulty breathing as though he had been running. Viewing the totality of the circumstances through the eyes of a trained law enforcement officer, we conclude there was reasonable suspicion.

[¶ 23] Other courts have upheld the stop of a vehicle under similar circumstances. *See, e.g., United States v. Juvenile TK*, 134 F.3d 899, 904 (8th Cir.1998) (reasonable suspicion exists when an officer received two dispatches forty minutes apart in the very early morning hours, identifying a male with a gun in a gray vehicle engaging in criminal activity, the officer spotted and stopped a gray vehicle

within two blocks of the scene of the second crime within five minutes of the second dispatch); *United States v. Jackson*, 652 F.2d 244, 248–49 (2d Cir.1981) (reasonable suspicion exists when officer stopped a vehicle after observing the driver's age, race, hairstyle, and coat color matched the suspect's description; the vehicle was coming from the direction the suspect had fled on foot five minutes before; and the driver was acting suspiciously); *State v. Glass*, 40 Kan.App.2d 379, 192 P.3d 651, 655–56 (2008) (reasonable suspicion for stop of a vehicle exists when the vehicle was a few blocks from the location of the crime within one minute of the dispatch call to the officer; the vehicle was the only traffic in the area; officer observed two black men in the vehicle matching the description of the suspects' number, race, and sex; and one of the individuals in the vehicle was wearing dark clothing which was consistent with the description of the suspects' clothing).

[¶ 24] Considering the totality of the circumstances, a reasonable person in the officer's position would be justified in believing Addai had been engaged in unlawful activity. We conclude there was reasonable and articulable suspicion to stop the vehicle. Because there was reasonable suspicion, we do not need to address whether the vehicle was properly stopped as part of "freezing" the scene. Although the district court's reasoning there was no reasonable and articulable suspicion to stop the vehicle is incorrect under the facts of this case, it reached the correct result. "[W]e will not set aside a correct result merely because the district court's reasoning is incorrect if the result is the same under the correct law and reasoning." *Hanson v. Boeder*, 2007 ND 20, ¶ 21, 727 N.W.2d 280.

## III

[¶ 25] Addai argues the district court erred in denying his motion to prohibit any testimony about the pretrial, showup identification and the in-court identifications because the showup identification was unnecessarily suggestive and unreliable. He claims the witnesses' in-court identifications were tainted by the unlawful pretrial identification.

[¶ 26] "[I]dentification testimony must be suppressed if, under the totality of the circumstances, the procedure for identification 'was so unnecessarily suggestive and conducive to irreparable mistaken identification' to constitute a denial of due process." *State v. Norrid*, 2000 ND 112, ¶ 8, 611 N.W.2d 866 (quoting *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)). In deciding whether identification testimony must be suppressed, the court must consider: "(1) whether the identification procedure is impermissibly suggestive, and (2) if so, whether the identification nevertheless is reliable under the totality of the circumstances." *Norrid*, at ¶ 10. The defendant has the burden of proving the identification procedure was impermissibly or unnecessarily suggestive, and if the defendant meets his burden, the State has the burden of showing the identification was reliable. *Id.*

[¶ 27] The district court found the showup identification was reliable but did not make any findings about whether the identification procedure was unnecessarily suggestive.

## A

[¶ 28] The "unnecessarily or impermissibly suggestive" prong is separated into two inquiries: "(1) whether the identification is suggestive, and (2) whether there is a good reason for not using a less suggestive procedure." *Norrid*, 2000

ND 112, ¶ 11, 611 N.W.2d 866. Single-person, showup identifications should generally be avoided and are inherently suggestive, but they are not necessarily unduly suggestive and may serve legitimate law enforcement purposes in some cases. *See id.* at ¶ 16; *United States v. Hawkins*, 499 F.3d 703, 707 (7th Cir.2007). If a suspect is shown singly in a suggestive manner, the court must decide whether the identification is unnecessarily suggestive, considering factors such as whether there was an emergency situation in which the victim or witness was facing imminent death or whether there were other exigent circumstances such as a need to quickly identify and apprehend the perpetrator. *Norrid*, at ¶ 12.

[¶ 29] The identification in this case was a single-person, showup identification. Addai was in the back of a patrol vehicle when Albertson and Bolgrean first arrived at the scene of the stop. Addai was in handcuffs and was removed from the patrol vehicle for the identification. Both witnesses identified Addai together. The identification was suggestive. *See Hawkins*, 499 F.3d at 707 (showup identifications are inherently suggestive). *Cf. United States v. Brownlee*, 454 F.3d 131, 138 (3d Cir.2006) (identification was suggestive when suspect was handcuffed, in the back of or standing beside a patrol car, surrounded by police officers, and was identified by multiple witnesses at once, subjecting the witnesses to the suggestive influence of others); *United States v. Jones*, 84 F.3d 1206, 1210 (9th Cir.1996) (identification was suggestive when defendant was only civilian presented for identification and was surrounded by officers holding up items matching those worn by the suspect). The court, however, must also consider why the identification was conducted in this manner to decide whether the identification was unnecessarily sug-

gestive. *Norrid*, 2000 ND 112, ¶ 12, 611 N.W.2d 866.

[¶ 30] Here, the identification occurred within fifteen minutes to an hour after the stabbing. Addai was stopped within a block of the stabbing location, and he matched the description of the stabbing suspect. Bolgrean testified an officer at the scene of the stabbing told her someone had been apprehended and asked whether Bolgrean and Albertson could go around the corner to the parking lot where the vehicle was stopped to see whether the individual was the person who stabbed Delonais. Bernier testified that he chose to do the showup identification because the witnesses drove up to the parking lot, pointed at the back of his squad car, and said the man in the back had stabbed Delonais. He testified that he asked Addai to exit the squad car so Albertson and Bolgrean could see Addai's height and clothing to ensure that he was the person they saw stab Delonais.

[¶ 31] Showup identifications conducted close in time and proximity to the crime may be necessary to ensure the correct person has been apprehended, the perpetrator is not still at large, and an innocent person is not being held. *See Hawkins*, 499 F.3d at 707–10 (showup identifications are not unduly suggestive in cases of extraordinary urgency, such as confirming the individual apprehended close in time and proximity to the crime scene is the suspected perpetrator); *United States v. Martinez*, 462 F.3d 903, 910–11 (8th Cir.2006) (prompt on-the-scene confrontations may be essential to free innocent suspects and inform the police if further investigation is necessary); *Norrid*, 2000 ND 112, ¶¶ 15–16, 611 N.W.2d 866 (robbery victim's identification at the hospital through a photograph was not unnecessarily suggestive, because law enforcement was concerned about quickly ap-

prehending the perpetrator). Confirming whether Addai was the man who stabbed Delonais was necessary for law enforcement to determine whether they needed to continue searching for the perpetrator. We conclude the showup identification was not unnecessarily suggestive under the circumstances of this case.

## B

[¶ 32] Even if the identification was unnecessarily suggestive, there is no due process violation if the identification is reliable. *See Norrid,* 2000 ND 112, ¶ 13, 611 N.W.2d 866. The court must consider the following factors under the totality of the circumstances to evaluate the reliability of an identification:

> The opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Id.* (quoting *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)).

[¶ 33] The district court considered the factors to evaluate the reliability of the identification, and found the identification was reliable. The evidence supports the court's findings.

[¶ 34] Albertson and Bolgrean had the opportunity to clearly view the perpetrator at the time of the stabbing, and their attention was focused on the crime. Albertson testified she saw Addai chasing Delonais down the street, and she initially watched them because she thought they were playing around. She testified they ran up to her in the driveway of a house where she was delivering a newspaper and

the men were close enough to her that she could reach out and touch them. Although she testified she froze when the men were right in front of her and she was mainly focused on Delonais, she also testified that she watched both men as they were approaching, the area was well lit, and she did not have any difficulty seeing the men. Bolgrean testified she stopped what she was doing to watch what was happening because she was concerned for Albertson since the men were so close to her. Bolgrean testified Addai came within thirty or thirty-five feet of her during the incident and she was able to observe the men for five to ten minutes. These factors support finding the identification was reliable.

[¶ 35] There was evidence Albertson's and Bolgrean's prior descriptions of Addai were accurate. Albertson testified the man she saw stab Delonais was a black male wearing a light blue shirt with white numbers on the shirt and a white scarf on his head. Bolgrean testified the man who stabbed Delonais was a little bit shorter than Delonais, and he was a black male wearing a light blue jersey type of shirt and a white scarf on his head. Albertson's and Bolgrean's descriptions were given to law enforcement, and Addai matched the descriptions. Albertson's and Bolgrean's descriptions were accurate, which supports finding the identification was reliable.

[¶ 36] Both Albertson and Bolgrean testified they were one hundred percent sure Addai was the man they saw stab Delonais. Albertson testified she and Bolgrean identified Addai as the perpetrator as soon as they arrived at the scene of the vehicle stop. She was certain about her identification because of Addai's race and the clothes he was wearing, and he looked to be the same age as the man she saw. Bolgrean testified she identified Addai as the perpetrator as soon as she pulled up to the stopped vehicle. Bolgrean testified

she was certain Addai stabbed Delonais, on the basis of his clothing and his race, and he appeared to be the right height. The witnesses' level of certainty weighs in favor of reliability. *See Boles v. Senkowski*, 878 F.Supp. 415, 423 (N.D.N.Y.1995) (witness identified perpetrator as soon as he saw him on the street, demonstrating a high level of certainty).

[¶ 37] Albertson and Bolgrean testified they identified Addai fifteen minutes to an hour after they saw Delonais attacked. The crime was still fresh in their minds, making their identifications more accurate. The short time between the crime and the identification also supports finding the identification was reliable. *See Clark v. Caspari*, 274 F.3d 507, 512 (8th Cir.2001) (only thirty minutes between the crime and identification supports finding identification was reliable).

### C

[¶ 38] We conclude the pretrial identification was reliable and was not unnecessarily suggestive under the totality of the circumstances in this case. The district court did not err in denying Addai's motion to prohibit any testimony about the showup identification. Because the showup identification was not unduly suggestive and unreliable, the in-court identifications were not tainted.

### IV

[¶ 39] Addai argues he suffered substantial prejudice because the State failed to disclose discovery material in a timely manner. Addai claims the State failed to disclose the picture of the tanto knife, compromising his ability to adequately conduct a pretrial investigation and deflecting the focus away from Tesafaye as a participant or the sole actor in Delonais's murder. Addai contends there is a reasonable probability the outcome would have been different if the State had disclosed the photograph of the knife in a timely manner and argues a new trial should be ordered.

[¶ 40] Rule 16, N.D.R.Crim.P., governs the disclosure of witnesses and evidence in criminal cases. *State v. Muhle*, 2007 ND 132, ¶ 22, 737 N.W.2d 647. Under N.D.R.Crim.P. 16, upon the defendant's request, the State must permit "the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings, or places, or copies or portions of any of these items, if the item is within the prosecution's possession, custody, or control...." N.D.R.Crim.P. 16(a)(1)(D). The rule is not limited to the materials actually in the State's possession, but also requires the State to disclose requested documents in the possession of other government agencies participating in the investigation or cooperating with the prosecution. *City of Grand Forks v. Ramstad*, 2003 ND 41, ¶ 19, 658 N.W.2d 731.

[¶ 41] If a party fails to comply with N.D.R.Crim.P. 16 or an order issued under the rule, the court may order the party to permit the discovery or inspection, grant a continuance, prohibit the party from introducing the undisclosed evidence, relieve the requesting party from making a disclosure the rule requires, or enter any other order that is just under the circumstances. N.D.R.Crim.P. 16(d). If a violation is shown, the district court has discretion in applying a remedy, and the court's decision will not be reversed absent an abuse of discretion. *Ramstad*, 2003 ND 41, ¶ 17, 658 N.W.2d 731.

[¶ 42] "Rule 16 is not a constitutional mandate, and a violation of the rule results in a constitutionally unfair trial only when 'the barriers and safeguards are so relaxed or forgotten the proceeding is more of a spectacle or a trial by ordeal

than a disciplined contest.'" *State v. Roerick,* 557 N.W.2d 55, 56 (N.D.1996) (quoting *State v. Rasmussen,* 365 N.W.2d 481, 483 (N.D.1985)). If the district court's ruling does not result in an inherently unfair trial, the court's decision will be reversed on appeal only when the defendant shows some substantial right has been denied. *Roerick,* at 56. No substantial right has been denied if the defendant is not significantly prejudiced by the discovery violation. *Ramstad,* 2003 ND 41, ¶ 25, 658 N.W.2d 731. "If the defendant fails to show he was significantly prejudiced by a discovery violation, a trial court's failure to exclude evidence or impose other sanctions under N.D.R.Crim.P. 16(d)(2) does not constitute an abuse of discretion." *Id.* at ¶ 26.

■ [¶ 43] Addai requested discovery material in August 2007, and the State disclosed evidence in response to that request. In an October 7, 2008, order the court ordered the State to disclose all evidence in its possession after Addai's first motion to dismiss for discovery violations. A picture of the tanto knife, showing blood on the blade, was not disclosed to the defense until October 28, 2008, four days before the trial was scheduled to begin. Addai moved for dismissal and to suppress the evidence. The court found the State's untimely disclosure of the photographs violated N.D.R.Crim.P. 16. The court denied Addai's motion to dismiss, but granted the motion to suppress the newly disclosed photographs. The court found the State had been warned on at least two prior occasions to cooperate with discovery, but there was no evidence that any lack of due diligence was willful. The court admonished the State for the failure to disclose this evidence sooner, but found there were other remedies available. Addai's attorney advised the court that Addai was not waiving his speedy trial rights, but he was not prepared to go to trial in four days because he wanted the knife tested for DNA from a lab of his choosing. The court ordered a continuance to allow Addai to get the knife tested.

[¶ 44] The knife was mentioned in police reports that were disclosed to Addai, including that the knife had blood on it, and the knife was available for inspection. Addai's attorney knew about the knife but failed to inspect it. We have said "a defendant is in a weak position to assert prejudice from the prosecution's failure to produce requested documents or other materials under N.D.R.Crim.P. 16 when the defendant had other available means to obtain the requested material." *Ramstad,* 2003 ND 41, ¶ 26, 658 N.W.2d 731.

[¶ 45] Moreover, Addai does not explain how he was significantly prejudiced by the late disclosure. The court suppressed the photographs, and granted a continuance to allow Addai to have the knife tested. At trial Addai argued Tesafaye committed the murder, there was evidence witnesses saw Tesafaye fighting with Delonais, there was evidence the knife belonged to Tesafaye, and an expert testified the knife had blood from Tesafaye on the handle and blood from Delonais on the blade. Addai has not shown that the result of the proceedings would have been different and that he was prejudiced by the untimely disclosure.

■ [¶ 46] Although we do not condone the State's actions in this case, we conclude the district court did not abuse its discretion by denying Addai's motion to dismiss. We also caution, "although a showing of prejudice is generally required before reversing a criminal conviction for a discovery violation, reversal for conduct which is merely potentially prejudicial may be warranted as a sanction for institutional noncompliance and systemic disregard of the law if the conduct is commonplace."

*Ramstad,* 2003 ND 41, ¶ 29, 658 N.W.2d 731.

## V

[¶ 47] During the trial, the courtroom was briefly closed to allow testimony from another attorney about a criminal case against Mohamed Hossein, who was convicted of tampering with the evidence in the murder investigation. The attorney objected to being called as a witness and stated that he would rather not comment on the case because it was a restricted file and the file was sealed. The court closed the courtroom during the attorney's testimony. The State objected to the court's decision to close the courtroom, but Addai's attorney indicated he did not have a problem with it. The State subsequently investigated the file and informed the court the file was restricted in error. The clerk's office removed the restriction on the file and the file was unsealed. The court ordered a transcript of the closed courtroom session and made the transcript available to the public.

[¶ 48] Addai argues the closing of the courtroom violated his right to a public trial. The Sixth Amendment of the United States Constitution guarantees a defendant the right to a public trial. The right to a public trial, however, "is not absolute and must give way in rare instances to other interests essential to the fair administration of justice." *State v. Garcia,* 1997 ND 60, ¶ 20, 561 N.W.2d 599.

[¶ 49] Addai did not object to the court's decision to close the courtroom. "A party may not assert alleged irregularities during a trial unless the party objects when they occur and allows the trial court an opportunity to take appropriate action to remedy any prejudice that may result from the alleged irregularities." *State v. Hernandez,* 2005 ND 214, ¶ 12, 707 N.W.2d 449. Issues that are not raised before the district court, including constitutional issues, "generally will not be addressed on appeal unless the alleged error rises to the level of obvious error under N.D.R.Crim.P. 52(b)." *State v. Parisien,* 2005 ND 152, ¶ 17, 703 N.W.2d 306. The defendant has the burden of proving plain error that affects his substantial rights to establish obvious error. *Id.* "Only constitutional error that is 'egregious' or 'grave' is subject to the obvious error rule." *Id.*

[¶ 50] Any error in closing the courtroom was not egregious or grave and does not rise to the level of obvious error. The courtroom was closed for a brief period of time. The court closed the courtroom after learning the case the witness was testifying about was restricted. The court later learned the case was marked restricted in error and made a transcript of the witness's testimony available to the public. Addai failed to object to the court's decision to close the courtroom, and he has failed to prove the court's decision was plain error affecting his substantial rights.

## VI

[¶ 51] Addai argues there was insufficient evidence to prove beyond a reasonable doubt that he murdered Delonais. He contends the State did not prove that he stabbed Delonais, the eyewitness identifications were fatally flawed, and there was evidence Tesafaye was the likely perpetrator.

[¶ 52] This court's standard of review for claims of insufficient evidence is well established:

> In an appeal challenging the sufficiency of the evidence, we look only to the evidence and reasonable inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant the conviction. A conviction rests upon insufficient evidence only when, after re-

viewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could find the defendant guilty beyond a reasonable doubt. In considering a sufficiency of the evidence claim, we do not weigh conflicting evidence, or judge the credibility of witnesses. A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts. A conviction may be justified on circumstantial evidence alone if the circumstantial evidence has such probative force as to enable the trier of fact to find the defendant guilty beyond a reasonable doubt.

*State v. Noorlun*, 2005 ND 189, ¶ 20, 705 N.W.2d 819 (citations omitted).

[¶ 53] There was evidence Delonais, Eric Delonais, Addai, and Tesafaye were involved in an altercation behind the apartment building. Eric Delonais testified that he saw Tesafaye make a stabbing motion at Delonais, Delonais hit Tesafaye, and then Delonais ran with Tesafaye following. Eric Delonais testified he saw Delonais turn and stab Tesafaye in the head, Tesafaye fell, and other people at the apartment subsequently took Tesafaye to the hospital. Eric Delonais testified Addai pulled out a knife after Tesafaye had been stabbed and swung it at Delonais's back and Delonais said "ow." Other witnesses also testified that they saw Addai with a knife behind the apartment building. Eric Delonais testified that Addai was the only person who stabbed Delonais in the back while they were behind the apartment building. Eric Delonais testified he and Delonais ran from the scene, and Addai was following them. There was evidence Delonais and Eric Delonais became separated, and Addai continued to follow Delonais.

[¶ 54] Albertson and Bolgrean testified that they saw a black male, whom they later identified as Addai, chasing Delonais. Albertson testified she heard Addai say, "I'm going to cut you, I'm going to kill you," and saw Addai swinging something at Delonais. Albertson testified Delonais was panicking and asked her to help him, and then Addai stabbed him. Bolgrean testified she saw Addai jump on Delonais, tussle with him, and then run off. Albertson testified Delonais said he had been stabbed, blood was coming out of his side, and he asked her to help him.

[¶ 55] There was evidence there was a significant amount of blood pooled around Delonais when law enforcement officers arrived after Albertson and Bolgrean called 911. There was testimony from the medical examiner that Delonais received multiple stab wounds, but only two were lethal, one in the chest and one to his kidney area in his back. The medical examiner testified it was possible Delonais would have been able to continue running after he received the two lethal stab wounds, but the injury to his kidney area would have lost a lot of blood very quickly because a major artery was cut.

[¶ 56] Addai had blood on his clothes and hands when he was arrested. Samples of the blood on his hands were taken for DNA testing, and the results showed the blood belonged to Delonais. A knife was found in the parking lot where Addai was stopped, and the knife had blood on it, which tested positive for Delonais's DNA.

[¶ 57] Although there was evidence Tesafaye possibly stabbed Delonais, under N.D.C.C. § 12.1-02-05 "[c]ausation may be found where the result would not have occurred but for the conduct of the accused operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the

accused clearly insufficient." The jury received an instruction about causation. Moreover, "a jury may find a defendant guilty even though evidence exists which, if believed, could lead to a not guilty verdict." *Noorlun*, 2005 ND 189, ¶ 20, 705 N.W.2d 819. Considering the evidence in the light most favorable to the prosecution, we conclude a rational fact finder could have found Addai guilty of murder beyond a reasonable doubt.

## VII

[¶ 58] We conclude the district court did not err in denying Addai's motion to suppress evidence of the stop, the showup identification was not unnecessarily suggestive and was reliable, the court did not abuse its discretion by denying Addai's motion to dismiss, and there is sufficient evidence to sustain his conviction. We affirm.

[¶ 59] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.