2011 ND 20

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Joseph Anthony CARPENTER, Defendant and Appellant.**

No. 20100085.

Supreme Court of North Dakota.

Feb. 8, 2011.

Ladd R. Erickson (argued), State's Attorney, Washburn, ND, for plaintiff and appellee.

Kent M. Morrow (argued), Bismarck, ND, for defendant and appellant.

KAPSNER, Justice.

[¶ 1] Joseph Carpenter appeals from a criminal judgment entered after a jury found him guilty of endangering by fire or explosion. The jury and the trial court found Carpenter was a habitual offender based on prior criminal convictions, and the court increased Carpenter's sentence accordingly. On appeal, Carpenter argues the evidence was insufficient to support the guilty verdict, the guilty verdict was inconsistent, the verdict form constituted an improper special verdict, the jury was erroneously given the task of determining Carpenter's habitual offender status, and the State did not provide reasonable notice of its intention to seek a sentence enhancement. We affirm the conviction but reverse and remand for resentencing upon proper notice to Carpenter.

I

[¶ 2] Carpenter and Jeffrey Hart lived in separate vehicles parked near each other in a parking lot. Carpenter and Hart were involved in an altercation. Several hours later, Hart awoke to find his vehicle in flames. Hart had burns on his hands, arms, and legs. His vehicle was destroyed, along with his possessions inside. Investigators determined the fire was set intentionally, and Carpenter was charged with endangering by fire or explosion. The jury found Carpenter guilty of endangering by fire or explosion by placing another person in danger of death under circumstances manifesting an extreme indifference to the value of life, and guilty of endangering by fire or explosion by causing damage to property in excess of two thousand dollars. The trial court sentenced Carpenter based on the jury's verdict of guilty on endangering by fire or explosion by placing another person in danger of death under circumstances manifesting an extreme indifference to the value of life. The trial court did not sentence Carpenter for endangering by fire or explosion by causing damage to property in excess of two thousand dollars.

[¶ 3] One day before trial, the State filed notice of its intention to seek a habitual offender sentence enhancement under N.D.C.C. § 12.1–32–09. Carpenter objected to the notice before the trial began by asserting one day was unreasonable notice. The trial court found the notice was reasonable. The jury was not informed of the State's intention to seek a habitual offender sentence enhancement until after the guilty verdict was returned. During sentencing, the State presented Minnesota criminal judgments against Carpenter to the jury, and the jury found Carpenter was a habitual offender within the meaning of the statute. The trial court noted it also found Carpenter was a habitual offender and enhanced Carpenter's sentence.

II

[¶ 4] On appeal, Carpenter argues the evidence was insufficient to support the guilty verdict returned by the jury because only circumstantial evidence was present-

ed, and the circumstantial evidence was not consistent.

[¶ 5] This Court's review of the sufficiency of the evidence to support a guilty verdict by a jury is highly deferential:

In an appeal challenging the sufficiency of the evidence, we look only to the evidence and reasonable inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant the conviction. A conviction rests upon insufficient evidence only when, after reviewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could find the defendant guilty beyond a reasonable doubt. In considering a sufficiency of the evidence claim, we do not weigh conflicting evidence, or judge the credibility of witnesses. A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts. A conviction may be justified on circumstantial evidence alone if the circumstantial evidence has such probative force as to enable the trier of fact to find the defendant guilty beyond a reasonable doubt.

*State v. Addai,* 2010 ND 29, ¶ 52, 778 N.W.2d 555 (quoting *State v. Noorlun,* 2005 ND 189, ¶ 20, 705 N.W.2d 819 (citations omitted)).

[¶ 6] The jury heard testimony from Hart on the fight between Hart and Carpenter. A fire marshal testified she found gasoline on the ground around Hart's vehicle, and it was clear the gasoline did not come from the vehicle's unexploded gasoline tank. The fire marshal determined the fire was arson, gasoline was used to start the fire, and the fire began outside the vehicle and moved inside. A police officer testified Hart told him about the fight with Carpenter, and

the officer found blood in and around Carpenter's vehicle. The police officer testified he later found Carpenter behind washing and drying machines in a nearby laundry facility. Carpenter said he was hiding because he was afraid of someone. The sweatshirt Carpenter was wearing had a significant amount of blood on it. The police officer testified he found a lighter on Carpenter and the police car smelled strongly of gasoline while Carpenter was in the backseat. The police officer testified someone reported a gasoline can missing from a shed near the scene of the fire, and police found what appeared to be blood around and on the shed. The gasoline can was later found in a garbage can, which also had blood on it.

[¶ 7] Carpenter admits the evidence suggests guilt, but argues the evidence "does not exclusively show only Carpenter's guilt." Carpenter argues no one tested the substances that appeared to be blood to ensure the substances were blood. Carpenter contends no one saw him at the scene of the fire, nor did anyone testify they found blood at the scene of the fire. These claims do not render the circumstantial evidence so inconsistent that the evidence lacks sufficient probative force. "[A] jury may find a defendant guilty even though evidence exists which, if believed, could lead to a not guilty verdict." *Addai,* 2010 ND 29, ¶ 57, 778 N.W.2d 555 (quoting *Noorlun,* 2005 ND 189, ¶ 20, 705 N.W.2d 819). There was evidence on the record for the jury to rely upon in finding Carpenter guilty. Even without any of the evidence concerning the blood trail, the jury heard evidence about a fight, the fire several hours later, the testimony of the fire marshal that the fire was started with gasoline, and the gasoline on Carpenter's shirt. The evidence was not inconsistent and was sufficient to support the verdict.

## III

[¶ 8] Carpenter argues the verdict was inconsistent.

[¶ 9] On the verdict form, the jury marked Carpenter guilty of endangering by fire or explosion by placing another person in danger of death under circumstances manifesting an extreme indifference to the value of human life, and guilty of endangering by fire or explosion by causing damage to property of another constituting pecuniary loss in excess of two thousand dollars. The trial court sentenced Carpenter based upon the jury finding Carpenter guilty of endangering by fire by placing another person in danger of death, but Carpenter was not sentenced upon the jury finding Carpenter guilty of endangering by fire and causing property damage.

[¶ 10] Carpenter did not explain how the verdict was inconsistent, and we need not address this issue further. "Our Court will not consider an argument that is not adequately articulated, supported, and briefed." *State v. Bachmeier*, 2007 ND 42, ¶ 10, 729 N.W.2d 141.

## IV

[¶ 11] Carpenter argues the verdict form was an improper special verdict.

[¶ 12] Carpenter was charged with one count of endangering by fire or explosion by starting a fire and placing another person in danger of death, a class B felony, *or* by starting a fire and causing damage to property in excess of two thousand dollars, a class C felony. The verdict form provided:

We, the jury duly impaneled and sworn to try the above-entitled action, do make the following findings regarding the defendant, Joseph Carpenter,

Endangering by Fire or Explosion by placing another person in danger of death under circumstances manifesting an extreme indifference to the value of human life:

NOT GUILTY ____ GUILTY ____

and/or

Endangering by Fire or Explosion by causing damage to property of another constituting pecuniary loss in excess of two thousand dollars.

NOT GUILTY ____ GUILTY ____

The jury was told they could find Carpenter not guilty, guilty of endangering by fire or explosion by either method, or guilty of endangering by fire or explosion by both methods. The jury marked guilty on both methods of endangering by fire or explosion. The trial court, however, sentenced Carpenter based on only the first method, because it is a higher-level offense, and Carpenter was only charged with one count of endangering by fire or explosion.

[¶ 13] "A special verdict is one in which the jury finds all the facts and then refers the case to the court for a decision on those facts." *State v. Sheldon*, 301 N.W.2d 604, 613 (N.D.1980). A special verdict includes findings on all the material issues and is rendered in lieu of a general verdict. *Id.* The verdict form in this case looks like a special verdict, because the jury was required to determine by which method Carpenter was guilty, and since the jury decided Carpenter was guilty of both methods, the court was required to decide which method Carpenter would ultimately be convicted and sentenced upon.

[¶ 14] Special verdicts are generally disfavored in criminal cases. *State v. Steen*, 2000 ND 152, ¶ 9, 615 N.W.2d 555. Special verdicts may coerce jurors into rendering a guilty verdict or prevent the jury from deciding guilt or innocence free from influence. *Id.* (citing *Sheldon*, 301 N.W.2d at 614). Special verdicts are allowed in criminal cases in very

limited circumstances, such as treason, or where the defendant is claiming lack of criminal responsibility, double jeopardy, or other defenses not reflected in a general verdict. N.D.R.Crim.P. 31(e). None of the conditions under Rule 31(e) were present in this case, so a special verdict was improper. However, the verdict procedures used in this case are not reversible error.

[¶ 15] Carpenter did not object to the verdict form, nor did he object to the instructions given to the jury. The transcript reveals the court and the parties discussed the verdict procedures before and after the trial:

> THE COURT: The other thing I wanted to address was I did send out re-done Jury instructions with the charge in the alternative. And, you know, I've done this before numerous times in DUI trials, obviously, and that's kind of what I did here. It's not charged separately. And then, obviously, if convicted of the first portion, it's a B Felony; if convicted of the second portion, it's a C Felony.
>
> . . . .
>
> THE COURT: But the way I have it, they have to convict one way or the other of either/or. I mean, obviously, if they convict of the endangerment by fire with disregard for human life, if they find guilty on that portion, the Jury never knows whether it's a B, C, what level of offense it is.
>
> I just want to make sure how I have put it, does it-I read it, my court reporter read it, and we could follow it. And if the parties have an objection one way or the other.
>
> . . . .
>
> MR. FINCK [Carpenter's attorney]: The objection, I guess, it says "and/or."
>
> THE COURT: But the problem is, they could find and/or. It's charged in the alternative. Just like in a DUI, whether it's driving under the influence or under the influence or having an AC of greater than .08 at the time, they can convict of both charged in the alternative. And that's why they have to find in each. I have also included the unanimous verdict, method of commission of offense where they have to specifically find unanimously each version or not find each version. So they could come back—it would still only be one conviction, but they could come back guilty on both alternatives, or not guilty on both alternatives.
>
> Any comments? That's what I'm looking for right now. Any objection, Mr. Finck? I'll go to you, first.
>
> . . . .
>
> MR. FINCK: At this point, I would say not now, but if I could reserve potential—until a potential conference.

After the trial, and before the jury instructions, the court gave Carpenter another chance to state an objection:

> THE COURT: Okay. And then let's talk about jury instructions. Any comments, Mr. Erickson [State's attorney]?
>
> MR. ERICKSON: No, Your Honor.
>
> THE COURT: Okay. Mr. Finck, have you had opportunity to review those now?
>
> MR. FINCK: I have, Your Honor. I guess, I'm still—I would have no objection to it.

The trial court fashioned the verdict form and the jury instructions because of the manner in which Carpenter was charged. Carpenter was charged with one offense, but the State was alleging Carpenter was guilty under either provision. The parties did not object to, and agreed to, the particular procedures adopted by the trial court, because it fit the circumstances of this case.

[¶ 16] Because Carpenter did not object to the verdict form and jury

instructions at trial, we review for obvious error under N.D.R.Crim.P. 52(b). "If a defendant fails to object, the failure operates as a waiver of the issue on appeal unless the defendant establishes obvious error." *State v. Fickert*, 2010 ND 61, ¶ 7, 780 N.W.2d 670; *see also* N.D.R.Crim.P. 52(b). "To establish obvious error, the defendant must show: (1) error; (2) that is plain; and (3) affects substantial rights." *Fickert*, at ¶ 7 (quoting *State v. Demarais*, 2009 ND 143, ¶ 17, 770 N.W.2d 246). "Our power to notice obvious error is exercised cautiously and only in exceptional situations where the defendant has suffered serious injustice." *Id.* (quoting *State v. Bethke*, 2009 ND 47, ¶ 25, 763 N.W.2d 492). Any error in the verdict form and jury instructions was a harmless error, because it did not affect Carpenter's rights, and he agreed to the form created by the trial court. *See* N.D.R.Crim.P. 52(a) ("Any error, defect, irregularity or variance that does not affect substantial rights must be disregarded.").

V

[¶ 17] Carpenter argues the jury was erroneously told of the State's intention to seek the habitual offender sentence enhancement and allowed to determine whether Carpenter was a habitual offender. Carpenter agreed to the procedure of allowing the jury to determine whether Carpenter was a habitual offender after the verdict was entered. We review for obvious error. N.D.R.Crim.P. 52(b).

[¶ 18] A court may extend a sentence for an offender convicted of a crime beyond the usual statutory limits. N.D.C.C. § 12.1–32–09(1)(c). A court may sentence an offender as a habitual offender if:

> the offender is an adult and has previously been convicted in any state or states or by the United States of two felonies of class C or above committed at different times when the offender was an adult. For the purposes of this sub-

> division, a felony conviction in another state or under the laws of the United States is considered a felony of class C or above if it is punishable by a maximum term of imprisonment of five years or more.

*Id.*

[¶ 19] The habitual offender statute provides differing procedures, depending on whether the State is seeking to have an offender declared a habitual offender or a special dangerous offender. *Compare* N.D.C.C. §. 12.1–32–09(4)(a) *with* (b). If the defendant was tried in front of a jury, the jury must find the defendant is a special dangerous offender, beyond a reasonable doubt, after entering the guilty verdict. N.D.C.C. § 12.1–32–09(4)(a); *see also Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). If the State is seeking to have the defendant declared a habitual offender, the trial court must find, by a preponderance of the evidence, the defendant's criminal history is sufficient to deem the defendant a habitual offender. N.D.C.C. § 12.1–32–09(4)(b). The jury must not be told the State is seeking a sentence enhancement *before* the verdict is decided and announced. N.D.C.C. § 12.1–32–09(3) (emphasis added). However, Carpenter is incorrect that a jury may never know the State is seeking a sentence enhancement, because the statute dictates the jury must decide whether an offender is a special dangerous offender. In that situation, the jury must know of the State's intention and hear the evidence on a special dangerous offender enhancement *after the verdict* has been announced.

[¶ 20] The trial court and the parties were confused on the proper procedure to follow. The jury was correctly not informed of the State's intention to seek a sentence enhancement until after the verdict was announced. After the jury decid-

ed the issue and after reviewing the statute, the trial court also found Carpenter was a habitual offender within the meaning of the statute. Though the habitual offender sentence enhancement is not the jury's decision to make, *see Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348, the error in allowing the jury to hear the evidence and make a decision was harmless. The procedures did not impact the guilt phase, and the statute was ultimately complied with. Carpenter has not shown the procedures were obvious error under N.D.R.Crim.P. 52(b).

## VI

[¶ 21] Carpenter argues the State gave unreasonable notice of its intention to seek the habitual offender sentence enhancement because the notice was filed one day before trial.

[¶ 22] "A district court is afforded wide discretion in sentencing. This Court will vacate a district court's sentencing decision only if the court acted outside the limits prescribed by statute or substantially relied on an impermissible factor in determining the severity of the sentence." *State v. Henes*, 2009 ND 42, ¶ 6, 763 N.W.2d 502 (citations omitted). Under a prior version of the sentencing enhancement statute, this Court stated, "the whole process of being found to be, and sentenced as, a dangerous special offender is a discretionary part of the procedure of sentencing a defendant upon conviction of a substantive charge...." *State v. Wells*, 265 N.W.2d 239, 243 (N.D.1978). Though the trial court no longer determines whether an offender is a special dangerous offender, the trial court's role in determining the habitual offender status and sentence enhancement is the same as in *Wells*. *Compare* 1973 N.D. Sess. Laws ch. 116, § 31 *with* N.D.C.C. § 12.1-32-09. We review the trial court's decision to proceed with the habitual offender proceedings and apply a sentence enhancement under

N.D.C.C. § 12.1-32-09 for an abuse of discretion. "A trial court abuses its discretion only when it acts in an arbitrary, unreasonable, or capricious manner, or misinterprets or misapplies the law." *State v. Ripley*, 2009 ND 105, ¶ 12, 766 N.W.2d 465 (citations omitted).

[¶ 23] The statute providing for habitual offender sentence enhancements requires a prosecutor to provide notice of its intent:

> [T]he attorney, *at a reasonable time before trial* ... may sign and file with the court, and may amend, a notice specifying that the defendant is ... a habitual offender who upon conviction for the felony is subject to the imposition of a sentence under subsection 2, and setting out with particularity the reasons why the attorney believes the defendant to be ... a habitual offender.

N.D.C.C. § 12.1-32-09(3) (emphasis added). An offender appealing a sentence enhancement due to defective notice must show the error was prejudicial. *See Greybull v. State*, 2004 ND 116, ¶ 4, 680 N.W.2d 254 (deciding the defendant received adequate notice and noting the defendant failed to assert or show how she was prejudiced by the timing of the notice); *see also State v. Jensen*, 333 N.W.2d 686, 696 (N.D. 1983) (noting it was difficult to imagine how the defendant had been prejudiced by the trial court's prior knowledge of the State's intention to seek special dangerous offender status). If the trial court erred in applying a sentence enhancement, the remedy is to remand for a new sentence, because the error did not impact the guilt phase of the trial. *State v. Jensen*, 251 N.W.2d 182, 188 (N.D.1977).

[¶ 24] The purpose of giving adequate notice is to allow the defendant to prepare for and defend himself against evidence offered by the State in support of sentence enhancement. *Wells*, 265

N.W.2d at 246. The State filed notice of its intention to seek a habitual offender sentence enhancement one day before trial. Carpenter's trial counsel suggested Carpenter was aware the State might seek to enhance his sentence: "And, although [the State] did mention it in plea negotiations, notice of the filing was not given until yesterday. So we would just object at this point that there was not reasonable notice under the statute." The trial court responded, "And, well, I'll find reasonable notice. You knew about it. The opportunity. And I have received all of the judgments." Based on a review of the record, we cannot determine what kind of notice Carpenter may have received before the State filed a notice with the court. Whether Carpenter received notice of any of the judgments used to determine he was a habitual offender under the statute is not evident from the record.

[¶ 25] The record does not show Carpenter received prior notice of the State's intent. The record does contain an adequate showing of the prejudice to both Carpenter and the trial court from the late filing of notice. According to the trial transcript, there was initial uncertainty over whether Carpenter's past crimes were equivalent to class C felonies or above, as required by the statute. The State submitted certified criminal judgments against Carpenter from the state of Minnesota. Section 12.1–32–09(1)(c), N.D.C.C., provides offenses committed in other states are classified as class C felonies or above if the offenses were punishable by a maximum term of five years or more. Carpenter argued there was no proof the Minnesota offenses were the equivalent of a class C felony or above. The trial court eventually remedied this issue by examining the actual amount of time Carpenter was incarcerated and found there were at least two offenses where Carpenter served more than five years in prison. The court reasoned the maximum sentence on those offenses must have been punishable by a maximum of more than five years. However, Carpenter may have defended against the habitual offender status on other grounds not obvious from this record had the State's notice been filed earlier or had Carpenter received the judgments earlier.

[¶ 26] The trial court was also prejudiced by the late filing of the notice. The transcript shows the trial court and the parties were uncertain of the necessary procedures to properly determine Carpenter's habitual offender status. There was some discussion before trial on whether the United States Supreme Court case, *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), applied or required certain procedures. Though it was not reversible error, this confusion resulted in both the trial court and the jury deciding whether Carpenter was a habitual offender. The parties and the trial court were unsure whether arguments were appropriate after the State presented the prior judgments. The parties and the trial court were unsure whether the prior crimes were the equivalent of class C felonies or greater, and the trial court had to assume the prior offenses probably did satisfy the statute because of the amount of time Carpenter was incarcerated. The trial court and Carpenter were clearly unprepared for the habitual offender sentence enhancement proceedings.

[¶ 27] The one-day notice prejudiced both the trial court and Carpenter and was not given at a reasonable time before trial. The trial court abused its discretion under these circumstances when it allowed the sentence enhancement proceeding to continue despite Carpenter and the court receiving notice of the State's intention to seek a sentence enhancement the day before trial. We reverse the sentence and

remand for reconsideration of Carpenter's sentence upon proper notice.

## VII

[¶ 28] We affirm Carpenter's conviction. We reverse and remand for resentencing upon proper notice under N.D.C.C. § 12.1–32–09.

[¶ 29] GERALD W. VANDE WALLE, C.J., and MARY MUEHLEN MARING, J., concur.

DALE V. SANDSTROM and DANIEL J. CROTHERS, JJ., concur in the result.