Filed 11/15/11 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2011 ND 213

State of North Dakota, Plaintiff and Appellee

v.

Dickey Joseph Cain, Defendant and Appellant

No. 20110010

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Robert O. Wefald, Judge.

AFFIRMED.

Opinion of the Court by Crothers, Justice.

Pamela Ann Nesvig (argued), Assistant State’s Attorney, P.O. Box 5518, Bismarck, ND 58506-5518, for plaintiff and appellee.

Kent M. Morrow (argued), 411 North 4th Street, P.O. Box 2155, Bismarck, ND 58502-2155, for defendant and appellant.

State v. Cain

No. 20110010

Crothers, Justice.

[¶1] Dickey Joseph Cain appeals the district court’s criminal judgment and finding of habitual offender status entered after a jury convicted him of conspiracy to commit aggravated assault.  Cain argues the district court erred by (1) denying his motion for judgment of acquittal because the State failed to introduce sufficient evidence of the agreement required to establish a conspiracy, (2) finding he was a habitual offender based on certified copies of prior convictions at the same proceeding as the sentencing hearing, (3) denying his pretrial motion to dismiss due to violation of his right to a speedy trial and (4) denying his motion in limine to exclude photographs of the victim’s injuries.  We affirm.

I

[¶2] During the early morning hours of June 16, 2010, Burleigh County 911 received three calls reporting a fight in Bismarck.  Officers dispatched to the scene found the victim lying on the sidewalk covered in blood with severe injuries to his head and face.  The officers determined the victim and his brother had been in a fight with Cain and Darin Falcon.

[¶3] Cain, Falcon and the victim’s brother had traveled to Bismarck in Cain’s car on June 15, 2010.  Sometime between the late evening of June 15 and the early morning of June 16, the three men went to the victim’s apartment where the victim’s wife and her sister were also present.  Around 3:30 a.m., the victim, his brother, his sister-in-law, Falcon and Cain left the apartment in Cain’s car.  The men in the car began to argue, and the driver pulled over.  Everyone got out of the car.  The fight during which the victim was injured ensued.  Cain and Falcon left the scene in Cain’s car before officers arrived.

[¶4] On June 16, 2010, Cain and Falcon were arrested and charged with conspiracy to commit aggravated assault.  Cain did not post bail and remained in custody until trial.  Before trial, Cain filed a speedy trial demand.  Cain later moved to dismiss under the Uniform Mandatory Disposition of Detainers Act (“UMDDA”), section 29-

33-03, N.D.C.C., because more than 90 days had passed since he demanded a speedy trial.  The district court denied the motion after concluding the UMDDA did not apply.  Cain also filed a pretrial motion to exclude photographs of the victim’s injuries.  The district court denied the motion during a pretrial conference.  At trial, the State introduced several photographs of the victim’s injuries without objection.

[¶5] During the State’s case, the victim and his brother testified about what happened after they left the apartment and how the fight occurred.  The victim testified he and his brother began arguing with Cain and Falcon before the car stopped.  He testified that shortly after they stopped, he fought with Falcon while his brother fought with Cain.  According to the victim, Falcon knocked him down and he got back on his feet and continued to fight with Falcon.  The victim testified that Cain then approached Falcon and the victim and hit the victim with a tire iron and that Cain and Falcon continued to beat him until he was unconscious.

[¶6] The victim’s brother also testified about the argument with Cain and Falcon before the fight started.  He testified that after everyone got out of the car, he and the victim tried to leave but that Falcon continued to confront them while Cain retrieved a chain and a tire iron from the trunk of the car.  According to the victim’s brother, Cain dropped the chain and the tire iron in the grass and began to fight with him while the victim fought with Falcon.  The victim’s brother testified that Cain then stopped fighting with him and ran towards the victim, retrieving the chain and tire iron on the way.  The victim’s brother further testified that he saw Cain throw the tire iron to Falcon, Falcon hit the victim with the tire iron, Cain hit the victim with the chain and Cain and Falcon beat the victim to unconsciousness.

[¶7] Cain moved for a judgment of acquittal after the State rested and renewed the motion after he presented his case.  The district court denied both motions.  The jury found Cain guilty of conspiracy to commit aggravated assault.  Cain was sentenced at a separate hearing.  At the hearing, the district court first determined whether Cain was a habitual offender.  Before trial, the State had filed a request for habitual offender status and four certified copies of prior judgments against Cain.  The district court found the certified judgments were sufficient to prove two previous felony convictions and sentenced Cain as a habitual offender.

II

[¶8] Cain argues the district court erred by denying his motion for a judgment of acquittal because the State did not establish a conspiratorial agreement existed between Cain and Falcon.  Cain argues the State had to prove “that an agreement existed between Cain and 
Falcon
 to commit an aggravated assault upon [the victim] 
before
 
Falcon
 commenced the assault upon [the victim].”  The State responds the evidence of collaboration between Cain and Falcon was sufficient to establish an implicit agreement.

[¶9] Under N.D.R.Crim.P. 29(a), “[a]fter the prosecution closes its evidence or after the close of all the evidence, the court on the defendant’s motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction.”  We review the denial of a motion for acquittal under the same standard as a challenge to the sufficiency of the evidence.  “When the sufficiency of evidence to support a criminal conviction is challenged, this Court merely reviews the record to determine if there is competent evidence allowing the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction.”  
State v. Kinsella
, 2011 ND 88, ¶ 7, 796 N.W.2d 678 (quoting 
State v. Wanner
, 2010 ND 121, ¶ 9, 784 N.W.2d 143).

[¶10] The two elements of a criminal conspiracy are an agreement to commit an offense and an overt act to effect the offense.  N.D.C.C. § 12.1-06-04(1).  “The agreement need not be explicit but may be implicit in the fact of collaboration or existence of other circumstances.”  
Id.
  An agreement may be implied based on the parties’ conduct.  
Interest of J.A.G.
, 552 N.W.2d 317, 320 (N.D. 1996).  However, “an agreement ‘is not supplied by mere knowledge of an illegal activity . . . let alone by mere association with other conspirators or mere presence at the scene of the conspiratorial deeds.’”  
State v. Serr
, 1998 ND 66, ¶ 14, 575 N.W.2d 896 (quoting 
United States v. Zafiro
, 945 F.2d 881, 888 (7th Cir. 1991), 
aff’d
, 506 U.S. 534 (1993)).  “[S]omething more” is required.  
Serr
, at ¶ 15.

[¶11] Here, the jury heard testimony that prior to Cain and Falcon beating the victim to unconsciousness, Falcon prevented the victim from leaving while Cain retrieved weapons from the car.  The jury also heard testimony that Cain provided Falcon with the weapon Falcon used to beat the victim and then joined in the beating.  Based on either act, the jury could have reasonably inferred Cain and Falcon agreed to assault the victim.

[¶12] Cain argues he and Falcon could not have formed a conspiratorial agreement because Falcon started the assault before Cain joined the fight.  We reject his argument for two reasons.  First, trial testimony conflicted regarding whether Falcon and the victim were fighting before Cain and Falcon implicitly agreed to assault the victim.  The victim, who admitted having difficultly remembering the incident due to his injuries, did testify to fighting with Falcon before Cain retrieved the weapons.  However, the victim’s brother testified that immediately after everyone got out of the car, Falcon confronted the brothers while Cain retrieved weapons.  That testimony was sufficient to prove an implied agreement before the physical confrontation ensued.  Second, Cain cites and this Court finds no authority supporting his assertion that an agreement to engage in conduct that constitutes an offense cannot be formed while the offense is ongoing.  Therefore, we conclude the district court did not err by refusing to grant Cain’s motion for judgment of acquittal.

III

[¶13] Cain argues the district court failed to follow the procedure required by section 12.1-32-09, N.D.C.C., when determining he was a habitual offender.  The State argues the district court complied with the habitual offender statute when it sentenced Cain.

[¶14] Under N.D.C.C. § 12.1-32-09(1)(c), 

“1. A court may sentence a convicted offender to an extended sentence as a dangerous special offender or a habitual offender in accordance with this section upon a finding of any one or more of the following: 

. . . . 

c. The convicted offender is a habitual offender.  The court may not make such a finding unless the offender is an adult and has previously been convicted in any state or states or by the United States of two felonies of class C or above committed at different times when the offender was an adult.  For the purposes of this subdivision, a felony conviction in another state or under the laws of the United States is considered a felony of class C or above if it is punishable by a maximum term of imprisonment of five years or more.”

[¶15] The statute requires that a defendant receive notice and have a hearing before being sentenced as a habitual offender.

“3. Whenever an attorney charged with the prosecution of a defendant in a court of this state for an alleged felony committed when the defendant was over the age of eighteen years has reason to believe that the defendant is a dangerous special offender or a habitual offender, the attorney, at a reasonable time before trial or acceptance by the court of a plea of guilty, may sign and file with the court, and may amend, a notice specifying that the defendant is a dangerous special offender or a habitual offender who upon conviction for the felony is subject to the imposition of a sentence under subsection 2, and setting out with particularity the reasons why the attorney believes the defendant to be a dangerous special offender or a habitual offender. . . .

“4. Upon any plea of guilty, or verdict or finding of guilt of the defendant of such felony, a hearing must be held, before sentence is imposed, in accordance with this subsection as follows: 

. . . . 

b. By the court if the notice alleges that the defendant is a habitual offender under subdivision c of subsection 1.  The court must find that the defendant is a habitual offender by a preponderance of the evidence.” 

N.D.C.C. § 12.1-32-09(3) and (4)(b).

[¶16] “We review the trial court’s decision to proceed with the habitual offender proceedings and apply a sentence enhancement under N.D.C.C. § 12.1-32-09 for an abuse of discretion.”  
State v. Carpenter
, 2011 ND 20, ¶ 22, 793 N.W.2d 765.  “A trial court abuses its discretion only when it acts in an arbitrary, unreasonable, or capricious manner, or misinterprets or misapplies the law.”  
Id.
 (quoting 
State v. Ripley
, 2009 ND 105, ¶ 12, 766 N.W.2d 465).

A

[¶17] Cain argues, “The trial court erred when it determined Cain to be a habitual offender without a hearing.”  Cain asserts the district court “did not indicate that evidence supported the finding and failed to provide Cain with an opportunity to object or present evidence.”  His argument is without merit and mischaracterizes the proceedings in the district court.  This Court has long recognized it is “permissible for the trial court to combine the dangerous special offender hearing and the sentencing hearing into one proceeding.”  
State v. Hoffarth
, 456 N.W.2d 111, 112 (N.D. 1990) (citing 
State v. Jensen
, 333 N.W.2d 686 (N.D. 1983)).  That is precisely what the district court did in this case.

[¶18] On July 28, 2010, the State filed notice of its habitual offender sentencing request.  The State attached certified copies of four former judgments against Cain to the notice and mailed Cain copies of the notice and judgments that same day.  More than three months later, on November 9-10, 2010, Cain was tried and convicted by a jury.  Cain does not argue he did not receive notice of the State’s habitual offender request within a reasonable time before trial.

[¶19] Following Cain’s conviction, the district court ordered a presentence report and scheduled a sentencing hearing for December 29, 2010.  At the hearing, the State introduced the certified copies of the former judgments attached to its original notice.  Cain argued the certified copies were not sufficient to prove he had two previous felony convictions.  The district court rejected Cain’s argument, found Cain was a habitual offender and imposed a sentence.  By finding Cain was a habitual offender before imposing a sentence, the district court complied with the section 12.1-32-

09(4), N.D.C.C., requirement that a hearing be held before sentence is imposed.

B

[¶20] Cain argues the district court erred by relying on certified, rather than authenticated, copies of Cain’s prior convictions to support its finding that Cain was a habitual offender.  Cain asserts section 12.1-32-09(5), N.D.C.C., “requires the State to produce 
authenticated
 copies of prior criminal judgments.”  Cain argues the State failed to comply with the statute because it “attached 
certified
 copies, not authenticated.”  At his sentencing hearing, Cain stated:

“I guess we would object to the attachments to the notice.  The statute specifically requires duly authenticated copies, not certified copies, as prima faci[e] evidence.  Without that authentication by the clerk’s office we don’t believe it’s prima facie evidence and would need to call the respective clerks to testify as to the authenticity of these additional exhibits.”

[¶21] The term “duly authenticated” is not defined in the North Dakota Century Code.  Because the term is not defined under our law, we apply its plain, ordinary and commonly understood meaning.  N.D.C.C. § 1-02-02.  
Black’s Law Dictionary
 defines “duly” as “[i]n a proper manner; in accordance with legal requirements.”  
Black’s Law Dictionary
 576 (9th ed. 2009).  
Black’s Law Dictionary
 does not define “authenticated” but defines “authentication” as:

“1. Broadly, the act of proving that something (as a document) is true or genuine, esp. so that it may be admitted as evidence; the condition of being so proved <authentication of the handwriting>. 2. Specif., the assent to or adoption of a writing as one’s own.”

Black’s Law Dictionary
 151 (9th ed. 2009).

[¶22] The Rules of Evidence recognize the self-authenticating nature of certified public documents.  Rule 901 is titled “Requirement of Authentication or Identification” and provides:

“(a) General Provision.  The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

“(b) Illustrations.  By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

. . . .

(7) Public Records or Reports. Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept.” 

Under N.D.R.Ev. 902,

“Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:  

“(1) Domestic Public Documents Under Seal.  A document bearing a seal purporting to be that of the United States, or of any State, district, commonwealth, territory, or insular possession thereof, or of the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.  

. . . . 

“(4) Certified Copies of Public Records.  A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) or complying with any law of the United States or of this State.”

[¶23] In this case, certified copies of four judgments were in evidence.  The State introduced copies of two Rolette County convictions stamped with a certification stating, “I hereby certify that the within and foregoing is a true correct and compared copy of the original now on file and of record in this office.”  The documents were signed by the clerk of court, dated and stamped with the county seal.  The State also introduced copies of two United States District Court for the District of North Dakota convictions stamped with a certification stating, “CERTIFIED COPY Original Filed with Clerk of Court.”  The documents were signed by a deputy clerk and stamped with the court’s raised seal.  The four certified copies were self-authenticating under N.D.R.Ev. 902(1) and (4).  The certified copies satisfy the duly authenticated requirement under our law.  We therefore conclude the district court did not err by admitting the certified copies and by finding Cain was a habitual offender.

IV

[¶24] Cain argues the district court erred by determining the speedy trial requirements of the UMDDA did not apply to his case.  The State claims the UMDDA did not apply because no detainer was filed against Cain.

[¶25] We review the district court’s conclusions of law de novo.  
State v. Torgerson
, 2000 ND 105, ¶ 3, 611 N.W.2d 182.  While Cain was entitled to a speedy trial under the Sixth Amendment to the United States Constitution and N.D. Const. art. I, § 12, his constitutional right to a speedy trial is not at issue in this appeal.  Rather, Cain argues he had a statutory right to a speedy trial under the UMDDA.

[¶26] Under the UMDDA: 

“Any person who is imprisoned in a penal or correctional institution of this state may request final disposition of any untried indictment, information, or complaint pending against that person in this state.  The request must be in writing addressed to the court in which the indictment, information, or complaint is pending and to the prosecuting official charged with the duty of prosecuting it and must set forth the place of imprisonment.”

N.D.C.C. § 29-33-01(1).  “Within ninety days after the receipt of the request and certificate by the court and prosecuting official . . . the indictment, information, or complaint must be brought to trial[.]”  N.D.C.C. § 29-33-03.

[¶27] Section 29-33-01, N.D.C.C., limits the applicability of the UMDDA “to those instances where a detainer has been filed against a person imprisoned in a penal or correctional institution in the State of North Dakota.”  
State v. Carlson
, 258 N.W.2d 253, 257 (N.D. 1977).  As we explained in 
State v. Moe
, “a detainer is a notification filed with the institution in which a prisoner is serving a sentence, advising that he faces pending criminal charges in another jurisdiction and requesting the institution to hold the prisoner or give notice when his release is imminent” and “may only be filed when the prisoner is serving a sentence on another charge, not when he is being held on the pending charge.”  1998 ND 137, ¶ 20, 581 N.W.2d 468.  Prior to his trial, Cain was being held on bond on the pending conspiracy charge.  The district court correctly concluded the speedy trial provisions of the UMDDA did not apply.

V

[¶28] Cain argues the district court erred by denying his motion to exclude photographs of the victim’s injuries because the district court failed to balance the probative value of the photographs against the danger of unfair prejudice as required by N.D.R.Ev. 403.  The State responds that the photographs were relevant and that their probative value was not substantially outweighed by the danger of unfair prejudice.

[¶29] “One of the touchstones for an effective appeal on any proper issue is that the matter was appropriately raised in the trial court so it could intelligently rule on it.”  
State v. Anderson
, 2003 ND 30, ¶ 6, 657 N.W.2d 245 (quoting 
State v. Osier
, 1999 ND 28, ¶ 14, 590 N.W.2d 205).  When a motion in limine is denied, the moving party must renew the objection at trial to preserve the issue for appeal.  In 
Anderson
, we explained,

“A motion in limine seeking an evidentiary ruling must be decided without the benefit of evaluating the evidence in the context of trial.  A renewed objection at the time the evidence is offered focuses the court on the objection in the trial context at which time both the relevance and the potential for prejudice will be more discernible.  A failure to object at trial ‘acts as a waiver of the claim of error.’”

Id.
 at ¶ 7 (quoting 
State v. Glass
, 2000 ND 212, ¶ 10, 620 N.W.2d 146).  By failing to object at trial, Cain denied the district court the opportunity to consider the photographs in the context of the trial.

[¶30] This Court reviews issues not raised in the trial court for obvious error.  N.D.R.Crim.P. 52(b).  “To establish obvious error, a defendant has the burden to show ‘(1) error, (2) that is plain, and (3) affects substantial rights.’”  
Anderson
, 2003 ND 30, ¶ 8, 657 N.W.2d 245 (quoting 
State v. Olander
, 1998 ND 50, ¶ 14, 575 N.W.2d 658).  “In analyzing obvious error, our decisions require examination of the entire record and the probable effect of the alleged error in light of all the evidence.” 
Anderson
, at ¶ 8 (quoting 
Olander
, at ¶ 12).

[¶31] Relevant evidence is generally admissible.  N.D.R.Ev. 402.  “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]”  N.D.R.Ev. 403.  “While N.D.R.Ev. 403 gives a district court the power to exclude relevant evidence . . . that power should be sparingly exercised.”  
State v. Klose
, 2003 ND 39, ¶ 28, 657 N.W.2d 276.  “When photographs are relevant or aid a witness’s testimony, even gruesome pictures are admissible for the purpose of offering proper proof.”  
Id.
 at ¶ 29.

[¶32] To prove the conspiracy, the State had to show that Cain and Falcon agreed to commit aggravated assault and that either Cain or Falcon did an overt act in furtherance of the offense.  Part of the State’s evidence to prove the implied agreement was the testimony that Cain retrieved weapons from the car and provided Falcon with a weapon.  The weapons were never recovered, and at trial, Cain raised questions about their existence.  A doctor who treated the victim shortly after the assault testified the victim’s injuries could have been caused by a chain or a tire iron.  The photographs were relevant to substantiate the claim that Cain and Falcon used weapons during the fight and to aid in the doctor’s testimony about the cause of the victim’s injuries.  The photographs were also relevant to prove the overt act in furtherance of the aggravated assault.  The district court did not commit plain error by admitting the photographs of the victim’s injuries.

VI

[¶33] The district court’s criminal judgment and finding of habitual offender status are affirmed.

[¶34] Daniel J. Crothers

Mary Muehlen Maring

Carol Ronning Kapsner

Dale V. Sandstrom

Gerald W. VandeWalle, C.J.