Filed 8/13/15 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2015 ND 201

State of North Dakota, Plaintiff and Appellee

v.

Joshua James Clark, Defendant and Appellant

No. 20140405

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Bruce B. Haskell, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Pamela A. Nesvig, Assistant State’s Attorney, P.O. Box 5518, Bismarck, N.D. 58506-5518, for plaintiff and appellee.

Charles A. Stock, P.O. Box 605, Crookston, MN 56716-0605, for defendant and appellant.

State v. Clark

No. 20140405

McEvers, Justice.

[¶1] Joshua Clark appeals from a criminal judgment entered after a jury found him guilty of conspiracy to commit murder.  Clark argues there was insufficient evidence to establish he conspired or agreed with another to commit murder.  Viewed in the light most favorable to the jury verdict, we conclude there is sufficient evidence to support the verdict, and we affirm the judgment.

I

[¶2] Clark and Theo Crowe were acquaintances and co-workers at a construction business in Bismarck.  On May 11, 2013, they were drinking together at Clark’s apartment in Bismarck.  In an interview with law enforcement officers, Clark stated he and Crowe were upset about the women in their lives and statements were made to the effect “they were so mad they could kill somebody.”  Clark testified at trial he did not specifically recall making that statement, but he “might have said it,” and if he did, he was not serious and “it would’ve just been two individuals blowing off steam.”

[¶3] After a confrontation between Crowe and Clark’s roommate at Clark’s apartment, Clark and Crowe got a ride to Crowe’s apartment in Bismarck.  According to Crowe’s neighbor, Paul Groce, he encountered Crowe and Clark outside Crowe’s apartment, and when he saw Crowe carrying a hammer in a striking position like he was going to use it on him, Groce walked away from the  situation and went inside his apartment and locked his door.  Groce testified he later saw Crowe and Clark leave Crowe’s apartment and “they seemed like they were intoxicated and they wanted to fight or something like that.”

[¶4] Clark testified they left Crowe’s apartment to get some marijuana, and they saw John Swain, an individual he had never met, at a nearby park.  Clark testified Crowe invited Swain back to Crowe’s apartment, where the three men listened to music and drank for about ten to fifteen minutes before Crowe got up and hit Swain in the head with a hammer.  Clark testified he was “shocked” by the incident and Crowe hit Swain four or five more times and then told Clark “it’s your turn now.” Clark testified he believed Swain was already dead and he hit Swain once in the head because he was scared of repercussions if he did not follow Crowe’s directions.  Clark testified that after he hit Swain, he gave the hammer back to Crowe, who continued to hit Swain at least five more times.  Clark testified he helped Crowe move Swain’s body to a bathtub, he started to wipe up some blood, he helped amputate Swain’s legs, and he helped move the body into a garage.

[¶5] According to Clark, he stayed overnight at Crowe’s apartment, and a friend picked him up the next morning. Clark testified he later disposed of the murder weapon, his work hammer, but he did not help Crowe burn Swain’s clothing or cell phone, he did not try to amputate Swain’s head, he did not help load Swain’s body into a pickup truck several days later, and he did not go with Crowe to bury Swain’s body in Montana.  Clark also testified he did not see Crowe again after leaving Crowe’s apartment.

[¶6] The State charged both Crowe and Clark with conspiracy to commit murder under N.D.C.C. §§ 12.1-16-01(1)(b) and 12.1-06-04, alleging they agreed to intentionally or knowingly cause Swain’s death and committed overt acts in furtherance of the conspiracy.  At Clark’s trial, Crowe refused to testify against Clark.  Clark claimed there was no evidence he agreed or conspired with Crowe to murder Swain and testified he was not serious about his statement that he was so mad he could kill someone.  A jury found Clark guilty of conspiracy to commit murder.

II

[¶7] Clark argues the evidence was insufficient to prove beyond a reasonable doubt he conspired to commit murder because there was no evidence of an agreement between him and Crowe to kill Swain or anyone.  Clark claims he was not serious about his statement that he was so mad he could kill someone, and because Crowe refused to testify at trial, there was no evidence to contradict his testimony.  Clark argues his statement he was so mad he could kill someone, if he made the statement, was made under the influence of alcohol and was in reference to him being upset about his girlfriend.  He argues any inference of an agreement from that statement is speculative.  He also argues Crowe killed Swain, and he only became involved after Swain was dead.  Clark testified that although he helped Crowe dismember Swain’s body, clean up, and dispose of evidence, those acts were done after the alleged conspiracy was terminated.

[¶8] In 
State v. Addai
, 2010 ND 29, ¶ 52, 778 N.W.2d 555 (quoting 
State v. Noorlun
, 2005 ND 189, ¶ 20, 705 N.W.2d 819) we described our well-established standard of review for claims of insufficient evidence:

In an appeal challenging the sufficiency of the evidence, we look only to the evidence and reasonable inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant the conviction.  A conviction rests upon insufficient evidence only when, after reviewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could find the defendant guilty beyond a reasonable doubt.  In considering a sufficiency of the evidence claim, we do not weigh conflicting evidence, or judge the credibility of witnesses.  A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts.  A conviction may be justified on circumstantial evidence alone if the circumstantial evidence has such probative force as to enable the trier of fact to find the defendant guilty beyond a reasonable doubt.

[¶9] The State charged Clark with conspiracy to commit murder under N.D.C.C. §§ 12.1-16-01(1)(b) and 12.1-06-04.  Under N.D.C.C. § 12.1-16-01(1)(b), a person is guilty of murder if the person causes the death of another human being under circumstances manifesting an extreme indifference to the value of human life.  Section 12.1-06-04, N.D.C.C., defines a criminal conspiracy in North Dakota and provides, in part:

1. A person commits conspiracy if he agrees with one or more persons to engage in or cause conduct which, in fact, constitutes an offense or offenses, and any one or more of such persons does an overt act to effect an objective of the conspiracy.  The agreement need not be explicit but may be implicit in the fact of collaboration or existence of other circumstances.

. . . .

3. A conspiracy shall be deemed to continue until its objectives are accomplished, frustrated, or abandoned.  “Objectives” includes escape from the scene of the crime, distribution of booty, and measures, other than silence, for concealing the crime or obstructing justice in relation to it.  A conspiracy shall be deemed abandoned if no overt act to effect its objectives has been committed by any conspirator during the applicable period of limitations.

[¶10] Under N.D.C.C. § 12.1-06-04, a criminal conspiracy consists of an agreement to commit an offense and an overt act to effect the offense.  
State v. Cain
, 2011 ND 213, ¶ 10, 806 N.W.2d 597.  “The agreement need not be explicit but may be implicit in the fact of collaboration or existence of other circumstances.”  
Id.
  “An agreement may be implied based on the parties’ conduct.”  
Id.
  However, an agreement is not established by mere knowledge of an illegal activity, by mere association with other conspirators, or by mere presence at the scene of the conspiratorial deeds.  
Id.
  This Court has said an agreement may be established by engaging in conduct while the offense is ongoing.  
Id.
 at ¶ 12.  
See
 
In Interest of J.A.G.
, 552 N.W.2d 317, 320 (N.D. 1996) (an agreement or understanding may be shown by the conduct of the parties).

[¶11] Bismarck police officer Shaun Burkhartsmeier testified that Clark made a statement to him that on the day Swain was killed, both Clark and Crowe were upset and statements were made to the effect “they were so mad they could kill somebody.”  According to Clark, he and Crowe discussed the possibility of killing someone and Crowe discussed the idea of a dark alley and using a hammer.  Officer Burkhartsmeier testified Clark told him that before Crowe handed him the hammer, Crowe told him “not to bitch out and you’re going to do your part.”  At trial, Clark testified Crowe gave him the hammer and said “it’s your turn now.”  Officer Burkhartsmeier testified that Clark also told him the plan was to cut the body up further, but it was too difficult.  Dawnie Crowe, Theo Crowe’s wife, testified Crowe told her that his friend helped him kill Swain with a hammer, and their plan was to never speak to each other again.  Bismarck police officer Mark Gaddis testified that Clark initially told him Crowe took out a shotgun, pointed it at him, and threatened him if he did not help get rid of Swain’s body, but at trial, Clark testified he never actually saw Crowe’s shotgun.  Officer Gaddis testified Clark also initially told him he did not assist Crowe in cutting off Swain’s legs, but later admitted to helping Crowe.  Officer Gaddis also testified that when Clark initially spoke to him, Clark told him the hammer used in the murder belonged to Crowe, but Clark later acknowledged his hammer had been used to kill Swain, and he had buried it in the concrete footings of a house.

[¶12] Clark’s changing and inconsistent versions of the events leading up to Swain’s death raise credibility issues about his testimony that he was not serious about being so mad he could kill someone.  In considering a sufficiency of the evidence claim, we do not reweigh conflicting evidence or judge the credibility of witnesses.  
Addai
, 2010 ND 29, ¶ 52, 778 N.W.2d 555.  A jury could have believed that Crowe and Clark were serious about that statement, especially given the parties’ conduct during the killing.  
See
 
Cain
, 2011 ND 213, ¶ 12, 806 N.W.2d 597 (agreement may be established by engaging in conduct while offense is ongoing).  Clark’s actions during the murder of Swain and his subsequent conduct to clean up or conceal the crime satisfy the definition of an objective of the conspiracy under N.D.C.C. § 12.1-06-04(3) and also provide circumstantial evidence of an agreement between Clark and Crowe.  There was also testimony by Crowe’s neighbor, Groce, about Groce walking away from a confrontational situation with Clark and Crowe and locking his door on the day Swain was killed.  Groce also testified about seeing Crowe and Clark leaving Crowe’s apartment “like . . . they wanted to fight or something like that.”

[¶13] Viewing the evidence in the light most favorable to the verdict, we conclude a rational fact finder could find the circumstantial evidence and Clark’s statement about being so mad he could kill someone established an implicit agreement with Crowe to commit murder.  Under this Court’s deferential standard of review of sufficiency of the evidence claims, we conclude there is sufficient circumstantial evidence to support the jury verdict.

[¶14] Relying on federal cases, Clark argues that there must be direct evidence the parties agreed to commit murder and that conduct after Swain’s death is not relevant to the conspiracy.  
See
 
Grunewald v. United States
, 353 U.S. 391, 413-15 (1957) (stating evidence of overt acts of concealment not sufficient to make act of concealment part of conspiracy); 
United States v. Todd
, 657 F.2d 212, 217 (8th Cir. 1981) (stating court not convinced evidence was sufficient to prove beyond a reasonable doubt defendant was involved in conspiracy to commit murder).  Clark’s reliance on federal cases applying federal conspiracy law is misplaced.  We have recognized the federal conspiracy statute is different from N.D.C.C. § 12.1-06-04.  
State v. Rambousek
, 479 N.W.2d 832, 836 (N.D. 1992) (distinguishing federal cases using bilateral theory of agreement for conspiracy from North Dakota law in N.D.C.C. § 12.1-06-04, which uses unilateral theory).  Section 12.1-06-04(3), N.D.C.C., explicitly states the “objectives” of a conspiracy include measures, other than silence, for concealing the crime.  Moreover, under the factual circumstances in 
Todd
, at 217, the appellate court was not convinced the evidence was sufficient to prove beyond a reasonable doubt the defendant was involved in an agreement to commit murder.  Under the factual circumstances in this case, however, we have concluded there was sufficient circumstantial evidence to establish an agreement between Crowe and Clark to support a conviction for conspiracy to commit murder under N.D.C.C. § 12.1-06-

04.

III

[¶15] We affirm the judgment.

[¶16] Lisa Fair McEvers

Dale V. Sandstrom

Daniel J. Crothers

Benny A. Graff, S.J.

Gerald W. VandeWalle, C.J.

[¶17] The Honorable Benny A. Graff, S.J., sitting in place of Kapsner, J., disqualified.