# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-1515

_____

LeRon Howard

*Petitioner - Appellant*

v.

Colby Braun, Warden, NDSP

*Respondent - Appellee*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: February 9, 2017
Filed: July 6, 2017

_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

LaRon[1] Howard was charged with murder in North Dakota state court in connection with the April 2011 death of Abdi Ali Ahmed. On August 23, 2012, a jury found Howard guilty of murder pursuant to N.D. Cent. Code § 12.1-16-01(1)(a)

---

[1]Though court documents spell Howard's first name "LeRon," Howard testified at trial that his name is spelled "LaRon."

and criminal conspiracy[2] pursuant to N.D. Cent. Code § 12.1-06-04(1), and the North Dakota Supreme Court affirmed Howard's convictions in October 2013. State v. Howard, 838 N.W.2d 416 (N.D. 2013). After Howard's state petition for postconviction relief was dismissed, Howard filed for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the District of North Dakota. The district court[3] denied Howard's petition, and we granted a certificate of appealability on the question of whether Howard's conspiracy conviction violated his constitutional due process rights because the evidence was insufficient to support the conviction. Having jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we affirm.

## I. Background

On April 29, 2011, Howard and Ahmed went to a local bar together before attending a house party with Janelle Cave. Howard, Ahmed, and Cave were friends. When the three left the party together in the early morning hours of April 30, 2011, they returned to the trailer that Howard and Cave shared. Shortly after arriving at the trailer, either Howard or Cave—or both—got in an argument with Ahmed. Howard and Ahmed left the trailer, and the argument escalated. Howard hit Ahmed twice in the head and Ahmed fell to the ground. Howard testified that he also kicked Ahmed, and when Ahmed kicked him back, Howard grabbed him by the legs and dragged him across the street. Howard said he then told Ahmed: "I'm sorry. I'm going to fix this. I'm going to get you some weed." Howard testified that Ahmed mumbled, but did not articulate any words, and was having trouble getting up on his own. Cave

---

[2]The conspiracy count charged that Howard conspired with Janelle Cave to commit murder in violation of N.D. Cent. Code § 12.1-06-04(1).

[3]The Honorable Charles S. Miller, Jr., United States Magistrate Judge for the District of North Dakota, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

testified that she was inside during the fight, and that she came outside to find Ahmed unconscious and unresponsive. Howard picked up Ahmed and put him on the floor in the backseat of Cave's car. At this point, Ahmed was still alive. Though both Cave and Howard denied doing so, someone retrieved a sword from the trailer and brought it into the car. It was approximately 5 a.m.

With Ahmed laying in the back of the car, Cave got into the driver's seat and Howard into the front passenger's seat. Howard told Cave to drive to Delmonte Jones' house to get marijuana. The extent of Ahmed's consciousness at this point is unclear: Cave testified that Ahmed made no sounds or movements and that she believed he was unconscious, but Howard testified that Ahmed raised his fingers to his mouth in a gesture that Howard interpreted as a request for a cigarette, and that Howard gave him one. When they arrived at Jones' house, Cave and Howard went inside together, leaving Ahmed in the car.

Jones testified that when they showed up at his house, both Cave and Howard were wearing gloves. He also said that Howard brought with him a sword wrapped in a brown blanket and put it on the kitchen counter. Cave testified that she smoked marijuana with Jones (Jones said it was only a cigarette), and that Howard told Jones that there was a body in the car. Howard also asked Jones if they could put a body in a well on Jones' property. Jones laughed—he didn't believe there was a body in the car—and said "just put him in the field," or "take it down the street [somewhere]." Jones also testified that after Cave smoked a cigarette, she picked up the butt, saying "no fingerprints," and then she and Howard left Jones' house 10 or 20 minutes after arriving. Howard took the sword with him, still wrapped in the brown blanket.

A short distance from Jones' house, Cave pulled over to the side of the road. Cave testified that she pulled over at Howard's request; Howard testified that Cave did so of her own volition. Once the car was stopped, Howard pulled Ahmed—who was still alive—out of the backseat. Cave testified that she got out of the car and

stood near the rear passenger's side, where she saw Howard use the sword to stab Ahmed, who appeared to be kneeling. Howard testified that it was he who stood back and watched as Cave stabbed and slashed at Ahmed with the sword. Howard and Cave then drove away, leaving Ahmed behind. Cave testified that she and Howard drove to a nearby river, where Howard handed her the sword and she threw it in the water. The two then returned to the trailer, where they separated for the first time since initially loading Ahmed into Cave's car; Cave slept in the bedroom and Howard played video games in the living room area. Later, in the afternoon of April 30, Howard disposed of Ahmed's sweatshirt in a stranger's trash can, shaved his facial hair, and washed the clothing that he wore the night before.

Ahmed's body was found by a passerby later that day, and a medical examiner determined that he died as a result of a blunt head injury and a stab wound to the abdomen. Although the examiner was unable to testify with certainty which wound was inflicted first, he explained that the lack of blood in Cave's car supported a conclusion that Ahmed was not stabbed before he was placed in the car. Ahmed also had defensive wounds on his arms, which the medical examiner testified supported a finding that Ahmed was alive and sufficiently conscious to try to defend himself at the time of the stabbing.

## II. Discussion

On an appeal from the denial of a habeas petition, we review the district court's findings of fact for clear error and its conclusions of law de novo. See Garcia v. Mathes, 474 F.3d 1014, 1017 (8th Cir. 2007). "Constitutionally, sufficient evidence supports a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Garrison v. Burt, 637 F.3d 849, 854 (8th Cir. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Because the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) allows the court to

grant habeas relief only where the adjudication of the claim in state court "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d), we will reverse the district court only if the North Dakota Supreme Court's determination that the evidence was sufficient to support a conspiracy conviction was "both incorrect *and* unreasonable," Garrison, 637 F.3d at 855 (quoting Cole v. Roper, 623 F.3d 1183, 1187 (8th Cir. 2010)).

A person commits the crime of conspiracy in North Dakota when he "agrees with one or more persons to engage in or cause conduct which, in fact, constitutes an offense or offenses, and any one or more of such persons does an overt act to effect an objective of the conspiracy." N.D. Cent. Code § 12.1-06-04(1); see State v. Burgard, 458 N.W.2d 274, 279 (N.D. 1990) ("Section 12.1-06-04, N.D.C.C., requires two elements for commission of criminal conspiracy: (1) an agreement to engage in conduct which constitutes an offense, and (2) commission of an overt act to effect an objective of the conspiracy."). Howard argues that his conspiracy conviction violates his constitutional due process rights because the evidence of an agreement between Howard and Cave to kill Ahmed was insufficient to support a conviction under § 12.1-06-04(1). An agreement need not be explicit, and "may be implicit in the fact of collaboration or existence of other circumstances," N.D. Cent. Code § 12.1-06-04(1), including the parties' conduct, see State v. Cain, 806 N.W.2d 597, 601 (N.D. 2011). While an agreement "is not established by mere knowledge of an illegal activity, by mere association with other conspirators, or by mere presence at the scene of the conspiratorial deeds," an agreement "may be established by engaging in conduct while the offense is ongoing." State v. Clark, 868 N.W.2d 363, 366 (N.D. 2015).

Howard argues that the evidence was insufficient to establish that he conspired with Cave to murder Ahmed. While there may be evidence of a conspiracy to conceal

the killing, he asserts, there was no evidence of a conspiracy to commit murder. As an initial matter, we note that Howard's attempts at concealment are relevant circumstantial evidence of the conspiracy to commit murder. North Dakota law defines the "objectives" of a conspiracy broadly to include not just the offense itself, but "escape from the scene of the crime, distribution of booty, and measures, other than silence, for concealing the crime or obstructing justice in relation to it." N.D. Cent. Code § 12.1-06-04(3). Compare Clark, 868 N.W.2d at 367 (applying North Dakota law and noting that the objectives of a conspiracy include concealment) with Grunewald v. United States, 353 U.S. 391, 413–15 (1957) (noting that evidence of concealment after the fact is insufficient to support a conviction under a federal conspiracy statute unless the government proves that the conspiracy explicitly or implicitly included agreement to conceal criminal act after its completion). Therefore, Howard and Cave's joint attempts to conceal the murder may be interpreted as evidence of an implicit agreement to murder Ahmed without getting caught, see Clark, 868 N.W.2d at 367, and are relevant not only to demonstrate a potential conspiracy to conceal the crime, but a conspiracy to commit the crime itself.

More importantly, the evidence presented at trial to establish a conspiracy to kill Ahmed was not limited to Howard and Cave's actions after Ahmed's death. Instead, the evidence included events that occurred during the period of time in which Ahmed was injured but remained alive. "[A]n agreement to engage in conduct that constitutes an offense" may "be formed while the offense is ongoing." Cain, 806 N.W.2d at 601. For example, in State v. Clark, the North Dakota Supreme Court affirmed Clark's conviction for conspiracy to commit murder where Clark joined in an attack that was already in progress. 868 N.W.2d at 367. While Clark testified that he was initially surprised when his codefendant attacked their victim, Clark admitted that, following this initial shock, he participated in the attack and assisted his codefendant in cleaning up the scene and moving the victim's body. Id. The Court explained that "Clark's actions during the murder of Swain and his subsequent conduct to clean up or conceal the crime satisfy the definition of an objective of the

conspiracy under N.D.C.C.§ 12.1-06-04(3) and also provide circumstantial evidence of an agreement between Clark" and his codefendant. Id.

Here, like in Clark, the evidence focused on Howard's conduct both during and after the murder. Howard admits that he participated in the events that ultimately lead to Ahmed's death, and Howard does not challenge his murder conviction in the instant appeal. Howard testified that he hit Ahmed in the head twice and kicked Ahmed before dragging him across the street and putting him in the backseat of Cave's car. Though a reasonable jury could have found that Ahmed was injured at that point, the evidence supports the conclusion that both Howard and Cave knew that Ahmed was still alive. For example, Cave testified that when she came out of the trailer and saw Ahmed on the ground, she checked his pulse and concluded that his heart was still beating. Howard testified that Ahmed asked for a cigarette while in the car, and Howard lit one and gave it to him. And the medical examiner testified that Ahmed had defensive wounds, indicating he was alive at the time of the stabbing.

Howard and Cave were together the entire time between Cave's checking Ahmed's pulse and their arrival back at the trailer after abandoning Ahmed. Both Cave and Howard knew that Ahmed appeared injured, and neither of them attempted to get Ahmed medical attention. Instead, they drove to Jones' house for marijuana. At Jones' house, Cave and Howard left Ahmed in the backseat of the car; they went inside, with a sword, and discussed disposing a body; and Cave made the comment "no fingerprints" when she picked up her cigarette before leaving. Both Cave and Howard were present during these conversations, and a reasonable jury could have concluded that they were not only speaking with Jones about what to do with the unconscious (but still living) Ahmed, but were also discussing options with each other. When they left Jones' house, Howard and Cave drove away with Ahmed still laying on the floorboard in the back, and without seeking medical attention for him. Eventually, Cave stopped the car and Howard pulled Ahmed out onto the street. Based on the evidence presented, a reasonable jury could find that Howard then

-7-

stabbed Ahmed with the sword as Cave watched. The evidence showed that the two then got back into the car, with Cave still driving, and that Howard watched Ahmed in the rearview mirror as they left him on the side of the road. Cave immediately drove Howard to a nearby river where they disposed of the sword used to stab Ahmed before returning to their shared home.

These facts, viewed in the light most favorable to the prosecution, see Jackson, 443 U.S. at 319, support a reasonable inference that Cave and Howard implicitly agreed to murder Ahmed—if not before the initial beating, then before the stabbing and before Ahmed's death. The evidence supported the findings that both Cave and Howard participated in committing the murder and attempting to conceal it. N.D. Cent. Code § 12.1-06-04(1); see Clark, 868 N.W.2d at 367 (defendant's actions during and after murder support reasonable inference that defendant implicitly agreed to commit the crime); Cain, 806 N.W.2d at 601 (agreement may be "implied based on the parties' conduct").

### III. Conclusion

The evidence in this case was constitutionally sufficient to support Howard's conviction for criminal conspiracy. See Garrison, 637 F.3d at 854–55. Because a reasonable juror could find each element of conspiracy pursuant to N.D. Cent. Code § 12.1-06-04(1) beyond a reasonable doubt, see id. at 854, we affirm.

_____