# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3553

_____

Harl A. Garrett

*Plaintiff - Appellant*

v.

Dexter Payne

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: April 16, 2025
Filed: October 3, 2025

_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.

_____

KELLY, Circuit Judge.

After a jury convicted Harl Garrett of sexual assault, he asked his lawyer to file an appeal. But weeks later, after Arkansas' window for filing a direct appeal had closed, Garrett was informed that his lawyer had instead withdrawn from representing him. Garrett's subsequent pro se motion to file a belated appeal was denied. Before us is Garrett's federal petition for habeas corpus under 28 U.S.C. § 2254, in which he alleges a violation of his right to pursue a direct appeal. The

district court denied Garrett's petition, finding that it was time-barred, but granted a certificate of appealability on whether Garrett's motion to file a belated appeal in Arkansas tolled the statute of limitations under 28 U.S.C. § 2244(d)(2). We answer that question in the affirmative, and we reverse and remand.

I.

On August 27, 2019, Garrett was convicted of second-degree sexual assault after a trial in Garland County, Arkansas. He received a 20-year sentence the same day. At the time, Garrett was represented by a lawyer named Ben Hooten, and Garrett asked Hooten to appeal his case. However, on September 11, 2019, Hooten instead filed a motion seeking to withdraw as Garrett's counsel. In the motion, Hooten admitted that Garrett "ha[d] requested that an appeal be entered," but Hooten felt that "[a]nother attorney would be better suited to look for errors that may have occurred at trail [sic], and not having to argue against the self interest of counsel." Hooten added that Garrett had "been given copies of *Rules of Appellate Procedure-Criminal, and Rules of the Supreme Court and Court of Appeals of the State of Arkansas*. . . . downloaded and printed off the Arkansas Supreme Court page." Hooten's withdrawal motion was hand-delivered to Garrett.

The same day, the trial court granted Hooten's motion to withdraw. However, Garrett never received the court's withdrawal order. So, Garrett did not learn Hooten was no longer on the case until October 8, 2019, when he received a letter from Hooten informing him that he was "on his own," "explaining . . . what the word Pro se means," and enclosing a pro se notice of appeal. By this point, Garrett's 30-day window to appeal his conviction had run. See Ark. R. App. P.–Crim. 2(a) (2019). On October 15, 2019, Garrett nonetheless signed a pro se notice of appeal and a request to proceed in forma pauperis, and mailed these papers to Hooten for filing. But two weeks later, Hooten returned the documents, informing Garrett that he would need to file the papers on his own, through the prison mail system. Hooten added that he was "doubtful they will accept them because they are too late being filed, but try it anyway."

On December 16, 2019, Garrett filed motions in both the Garland County Circuit Court and the Arkansas Supreme Court, seeking a belated appeal and to proceed in forma pauperis. See Ark. R. App. P.–Crim. 2(e) (2019). The Circuit Court declined Garrett's motions the following day, informing him that the Arkansas Supreme Court was the proper recipient. About a week later, the Arkansas Supreme Court also informed Garrett that his submissions were deficient because they lacked a "certified copy of the sentencing order and any other documents that . . . are relevant such as the order relieving [his] attorney of representation." In turn, on March 25, 2020, Garrett filed the motions again, with properly certified documentation.

In an order dated April 15, 2020, the Arkansas Supreme Court denied Garrett's motion for belated appeal. The court provided no explanation for its decision. Garrett next tried mailing a state postconviction petition to the Garland County Circuit Court. See Ark. R. Crim. P. 37.1(a). His motion claimed three errors: first, that Hooten "did not follow through with contract to defend"; second, that the prosecution had failed to properly investigate his case; and third, that the P.A. system had malfunctioned, harming Garrett's ability to hear what was going on during his trial.[1] But on September 17, 2020, the circuit court denied Garrett's petition as well, finding it was untimely. See Ark. R. Crim. P. 37.2(c)(iii) (2015). Garrett did not appeal this denial.

Acting pro se, Garrett filed a federal habeas petition under 28 U.S.C. § 2254 on October 19, 2020. The district court appointed him a lawyer, who filed an amended petition raising a single claim: that Garrett had been denied his constitutional right to a direct appeal. The petition stressed that despite Garrett asking to appeal his conviction, Hooten failed to file a notice of appeal on his behalf, and that both Hooten and the court failed to inform Garrett of Hooten's withdrawal or appoint a new lawyer to represent him in time to file a direct appeal. See Ark. R.

---

[1]At the time of trial, Garrett was 74 years old.

App. P.–Crim 16(b); see also Ahumada v. United States, 994 F.3d 958, 960 (8th Cir. 2021) ("A criminal defendant has a constitutional right to counsel on the first direct appeal.").

The district court denied Garrett's habeas petition as time-barred under the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). See 28 U.S.C. § 2244(d)(1). The timeliness of Garrett's petition hinged on whether AEDPA's statute of limitations had been tolled during the three-week pendency of Garrett's motion for a belated appeal, and the district court concluded that it had not. The district court acknowledged, however, that "reasonable jurists could disagree as to whether a motion for belated appeal in Arkansas qualifies as a basis for statutory tolling" under 28 U.S.C. § 2244(d)(2). In the district court's view, "the proper categorization of a motion for a belated appeal in Arkansas is not free from doubt," and a circuit split existed on the question. Accordingly, the district court "issue[d] a certificate of appealability on the statutory tolling issue related to the motion for a belated appeal."

Garrett appeals.

## II.

"On an appeal from the denial of a habeas petition, we review the district court's findings of fact for clear error and its conclusions of law de novo." Howard v. Braun, 862 F.3d 706, 709 (8th Cir. 2017).

A one-year limitations period applies to § 2254 petitions and "run[s] from the latest of," among other events, "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The district court found that Garrett's limitations period began running on October 8, 2019, when Garrett learned that his lawyer had abandoned him and his appeal period had expired. Garrett's § 2254

petition, which was filed on October 19, 2020, thus appeared to come eleven days after the deadline had passed.

However, AEDPA's limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Because Garrett's motion for a belated appeal was pending for about 20 days before the Arkansas Supreme Court denied it, his petition is timely if a belated-appeal motion in Arkansas constitutes "collateral review with respect to the pertinent judgment or claim."[2] Id.

In Wall v. Kholi, 562 U.S. 545 (2011), the Supreme Court defined the term "collateral review" as used in § 2244(d)(2). The Court first defined "collateral" as "a form of review that is not part of the direct appeal process." Id. at 552. Then, the Court turned to the term "review," which it explained was "best understood as an 'act of inspecting or examining,'" "a 'judicial reexamination,'" or "a looking over or examination with a view to amendment or improvement." Id. at 553 (citations omitted). Summing up, the Court defined "'collateral review' of a judgment or claim [as] a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process." Id.

Applying this definition, the Court in Wall held that a sentence-reduction motion in Rhode Island sought "collateral review" under § 2244(d)(2). Id. at 555–56. The motion was "collateral"—it happened outside the direct appeal process—and "undoubtedly call[ed] for 'review' of the sentence," because it "involve[d] judicial reexamination of the sentence to determine whether a more lenient sentence [wa]s proper." Id. The Court added the following distinction in a footnote: "[a] motion to reduce sentence is unlike a motion for post-conviction discovery or a motion for appointment of counsel, which generally are not direct requests for

---

[2]The parties do not dispute that Garrett's belated-appeal motion was "properly filed."

judicial review of a judgment and do not provide a state court with authority to order relief from a judgment." Id. at 556 n.4.

Garrett argues that a belated-appeal motion qualifies for statutory tolling under § 2244(d)(2) because it entails judicial review of "a 'claim' that an inmate's constitutional right to a direct appeal has been violated," and that such a motion "invites a reexamination of a judgment" because it seeks to reopen proceedings to appeal a conviction. In contrast, the State argues that a belated-appeal motion is more like a motion to appoint counsel or motion for discovery, which Wall indicated did not constitute "collateral review." 562 U.S. at 556 n.4.

In Arkansas, a belated-appeal motion allows "[t]he Supreme Court [to] act upon and decide a case in which the notice of appeal was not given or the transcript of the trial record was not filed in the time prescribed, when a good reason for the omission is shown by affidavit." Ark. R. App. P.–Crim. 2(e). A defendant may file such a motion up to 18 months after the entry of judgment, id., and has "good reason" when "the court makes the error causing the appeal to be untimely," or "the attorney has failed to timely file the notice of appeal," McDonald v. State, 146 S.W.3d 883, 888–89 (Ark. 2004). When a belated-appeal motion is granted, "the clerk of . . . court [is] ordered to accept the notice of appeal or record, and the appeal . . . proceed[s] without delay." Id. at 892.

A belated-appeal motion in Arkansas falls somewhere between the types of motions explicitly addressed in Wall. On one hand, by definition, a belated-appeal motion directly "le[ads] to new . . . proceedings" aimed solely at "gaining . . . relief from the judgment of conviction" or sentence. Streu v. Dormire, 557 F.3d 960, 965 (8th Cir. 2009) (holding that motion to reopen postconviction proceedings constituted "collateral review").[3] In this way, a motion for belated appeal is not

_____

[3]Our opinion in Streu predates the Supreme Court's decision in Wall. But we have not overruled Streu's holding, and as described below, we read Wall as consistent with Streu's assessment. See Young v. Hayes, 218 F.3d 850, 853 (8th Cir. 2000) ("This panel is bound by previous panel opinions of our own Court, but we

-6-

attenuated from an attack on the judgment or sentence in the same way as a motion for counsel or discovery. On the other hand, a belated-appeal motion is unlike the sentencing-reduction motion at issue in Wall, because it fails to put an Arkansas court in a position to immediately alter the underlying judgment in resolving the motion. Instead, a successful motion reopens an appeal of the underlying conviction.

In turn, our sister circuits have disagreed as to whether belated-appeal motions constitute "collateral review." The Sixth Circuit has assumed that belated-appeal motions, while pending, toll AEDPA's limitations period. See Board v. Bradshaw, 805 F.3d 769, 771–72 (6th Cir. 2015) (holding "a motion for leave to file a delayed appeal . . . is considered part of the collateral review process for purposes of tolling AEDPA's statute of limitations"); see also DiCenzi v. Rose, 452 F.3d 465, 468 (6th Cir. 2006) ("[A] motion for delayed appeal . . . if properly filed . . . does toll the statute during the time the motion was pending."). Contrarily, the Eleventh Circuit has held that such motions do not constitute "collateral review" under the definition provided in Wall. See Espinosa v. Sec'y, Dep't of Corr., 804 F.3d 1137, 1138–39 (11th Cir. 2015) ("[Petitioner]'s petition for belated appeal did not involve 'collateral review' of his conviction . . . ."); Danny v. Sec'y, Fla. Dep't of Corr., 811 F.3d 1301, 1302 (11th Cir. 2016) (same).

We conclude that an Arkansas motion for belated direct appeal constitutes "collateral review."[4] First, as the Arkansas Supreme Court has clarified, a belated-appeal motion falls outside the direct appeal process. Dodson v. Norris, 288 S.W.3d 662, 665 (Ark. 2008) (holding that "a motion for belated appeal is not part of the

_____

are not so bound if an intervening expression of the Supreme Court is inconsistent with those previous opinions.").

[4]Both a motion to reopen an appeal—which is necessarily filed after a judgment has become final—and a motion for postconviction relief predicated on the denial of a direct appeal are filed "outside of the direct review process." And the remedy for both is the same: to reinstate the direct appeal. The two motions, in both posture and remedy, appear to be materially indistinguishable, and we see no principled reason that the latter would be "collateral" and the former "direct."

ordinary appellate review process"). The State thus does not appear to dispute that it is at least "collateral" within Wall's meaning. See Wall, 562 U.S. at 553 (noting that "collateral" proceedings are those "separate from the direct review process").[5]

Second, we conclude that a belated-appeal motion invites "review" under § 2244(d)(2). When the Arkansas Supreme Court determines that good cause exists for a defendant's failure to perfect an appeal, the Court reopens the appeal. See Mangiapane v. State, 862 S.W.2d 258, 259 (Ark. 1993) ("The motion for belated appeal is granted. The Clerk of the Supreme Court is directed to reinstate the appeal for a determination on the merits."); see also Brown v. State, 644 S.W.3d 247, 249 (Ark. 2022) (same). The only result of a defendant's successfully moving for a belated appeal is to pursue one, and a belated-appeal motion reinstates a state court's jurisdiction to hear it, "provid[ing] . . . [it] with authority to order relief from a judgment." Wall, 562 U.S. at 556 n.4. Because a meritorious motion *requires* a state court to entertain the defendant's attack on his judgment, a request for a belated direct appeal is a "direct request[] for judicial review of a judgment" and thus constitutes "collateral review." Id.; see also Kares v. Morrison, 77 F.4th 411, 421 (6th Cir. 2023) (holding motion for postconviction DNA testing was "collateral review" under Wall because, despite being "sequential in nature," it "provides a mechanism for review of the underlying judgment by setting forth the procedures that a court *must follow* after receiving the results of postconviction DNA testing"); Hutson v. Quarterman, 508 F.3d 236, 239 (5th Cir. 2007) (drawing same conclusion, noting "the motion for post-conviction DNA proceedings is seeking to challenge that

_____

[5]We recognize that unlike the motion to reopen postconviction proceedings we considered in Streu, which was "designed to further the ultimate goal of gaining *collateral* relief from the judgment of conviction," 557 F.3d at 965 (emphasis added), the aim of a motion for belated direct appeal is to reinstate *direct* review. But this does not affect the collateral nature of the latter motion. It is collateral because it necessarily occurs outside of the direct review process, not because the relief it seeks involves reinstatement of an appeal. See, e.g., Koenig v. North Dakota, 755 F.3d 636, 642 (8th Cir. 2014) (granting collateral relief under § 2254 for denial of right to counseled direct appeal, and remanding for either new appeal or, "[i]f such an appeal is not granted" to the petitioner, for the judgment to be vacated).

-8-

judgment by potentially *requiring* that the trial court hold a hearing to determine whether it was reasonably probable that the convicted person would have been acquitted given the DNA results" (emphasis added)). This mandatory result from a successful belated-appeal motion—the requirement that the court reconsider the underlying conviction by entertaining the movant's contemplated appeal—further distinguishes it from a typical motion for discovery or counsel. See Streu, 557 F.3d at 965 (finding that Streu's motion was "collateral review" because it "*would have* led to new post-conviction proceedings in the circuit court . . . to further the ultimate goal of gaining collateral relief from the judgment of conviction" (emphasis added)).

The State argues, in line with the Eleventh Circuit, that a belated-appeal motion is not "collateral review" because it does not provide the court with authority to "immediately bring about" relief from the defendant's underlying judgment and does not entail review of the merits of the underlying conviction. See Espinosa, 804 F.3d at 1141 ("The appellate court considering the petition [for belated postconviction appeal] does not reexamine the underlying judgment or claim, and a ruling on the petition cannot make 'amendment[s] or improvement[s]' to the terms of custody." (quoting Wall, 562 U.S. at 553)); Danny, 811 F.3d at 1304 (noting "petition for a belated appeal does not qualify as an application for collateral review because, under Florida law, it 'does not reach the merits of the anticipated appeal'" (quoting Espinosa, 804 F.3d at 1141)).[6] The State's argument finds support in the

---

[6]Notably, it appears that Arkansas courts, at least in some cases, *do* address the underlying merits of a contemplated appeal when denying belated-appeal motions. See Bryant v. State, 575 S.W.3d 547, 549 (Ark. 2019) (noting that in adjudicating a motion for belated appeal under Rule 2(e), "this court need not consider the reasons for the petitioner's failure to file a timely notice of appeal when it is clear from the record that the postconviction petition denied was wholly without merit"); Latham v. State, 2018 Ark. 44, 2018 WL 897481, at *1 (2018) (refusing to consider petitioner's "reasons for not filing a timely notice of appeal because it is clear from the record that [his] petition was wholly without merit," and claiming that "an appeal from an order that denied a petition for postconviction relief . . . will not be permitted to go forward when it is clear that there would be no merit to the appeal"). Because the Arkansas Supreme Court provided no explanation for its denial of Garrett's belated-appeal motion, we cannot say whether it reasoned

dicta in <u>Wall</u>'s footnote distinguishing a sentence-reduction motion from motions for appointment of counsel or discovery because the latter two "generally are not direct requests for judicial review of a judgment and do not provide a state court with authority to order relief from a judgment." 562 U.S. at 556 n.4.

We do not read <u>Wall</u> so narrowly. <u>Wall</u> did not hold that to constitute "collateral review," a motion must place the state court in a position to *immediately* order relief from a judgment. Rather, <u>Wall</u> described "collateral review" as the "reexamination of a judgment or claim," "with a *view* to amendment or improvement." <u>Id.</u> at 553 (emphasis added) (quotation omitted). Indeed, <u>Wall</u> stressed a broad definition of "review," noting that "[j]ust because the phrase 'collateral review' encompasses proceedings that challenge the lawfulness of a prior judgment, it does not follow that other proceedings may not also be described as involving 'collateral review.'" <u>Id.</u> at 557–58; <u>see also</u> <u>Hardin v. Genovese</u>, No. 21-5867, 2023 WL 1992036, at *7 (6th Cir. Feb. 14, 2023) (Kethledge, J., dissenting) (noting that <u>Wall</u> "broadly defined the term 'review' as used in § 2244(d)(2)").

Our reading of <u>Wall</u> also comports with the principles of comity underlying § 2244(d)(2). We have noted that "the purpose of § 2244(d)(2) . . . is to 'encourage petitioners to seek relief from state courts in the first instance,' thereby giving 'an opportunity to the state courts to correct a constitutional violation.'" <u>Polson v. Bowersox</u>, 595 F.3d 873, 875 (8th Cir. 2010) (citation modified) (quoting <u>Streu</u>, 557 F.3d at 963–64); <u>see also</u> <u>Rivers v. Guerrero</u>, 145 S. Ct. 1634, 1645 (2025) (noting that "[t]he 1-year deadline for filing a § 2254 petition . . . promotes exhaustion of claims and respects state-court processes"). Arkansas' belated-appeal procedure is a mechanism to ensure the court can correct any errors underlying a judgment, and it only applies in situations where the defendant would have pursued one but for some failure of the court or counsel to file an appeal notice in time. <u>See</u> <u>McDonald</u>, 146 S.W.3d at 888–89.

---

similarly here.

And while <u>Wall</u> counseled against "complicat[ing] the work of federal habeas courts" through hinging a definition of "collateral review" on individualized inquiries, <u>see Wall</u>, 562 U.S. at 558–59 (rejecting interpretation of § 2244(d)(2) that would require making "difficult distinctions" in individual cases as to whether motion for sentence reduction "challenge[d] a sentence on legal grounds" or "merely ask[ed] for leniency"), we note our decision is especially appropriate in Garrett's case. Thirty days from the entry of judgment in his case, Garrett lost the ability to appeal, <u>see</u> Ark. Code Ann. § 16-91-105(a)(1), after the trial court and Garrett's lawyer allegedly failed to secure him that right. Garrett's belated-appeal motion asked the Arkansas Supreme Court to reconsider that failure; it was plainly a "direct request[] for judicial review" of the only claim he has brought in federal habeas proceedings—that he was denied a direct appeal due to both counsel and court error—and it "provide[d] a state court with authority to order [immediate] relief" in the form of a new appeal. <u>See Wall</u>, 562 U.S. at 556 n.4; <u>see also</u> <u>Collins v. Ercole</u>, 667 F.3d 247, 251 (2d Cir. 2012) ("Read straightforwardly, this passage [in <u>Wall</u>] says that 'review' occurs when a reviewing court reconsiders the work of the original court to correct any error or infelicity committed by that original court—or rather, submits that original court's work to examination for potential revision."). Indeed, both § 2244(d)(2) and <u>Wall</u> reference "collateral review with respect to the pertinent judgment *or claim*." 28 U.S.C. § 2244(d)(2) (emphasis added); <u>see also</u> <u>Wall</u>, 562 U.S. at 553 ("Viewed as a whole, then, 'collateral review' of a judgment or claim means a judicial reexamination of a judgment *or claim* in a proceeding outside of the direct review process." (emphasis added)). Garrett's motion gave Arkansas the opportunity to correct in its *entirety* the constitutional violation he now alleges in federal court. Put differently, in Garrett's case, "the need for federal habeas review [would have] be[en] . . . obviated," "further[ing] principles of 'comity, finality, and federalism.'" <u>Wall</u>, 562 U.S. at 558 (quoting <u>Williams v. Taylor</u>, 529 U.S. 420, 436 (2000)).[7]

---

[7]The State argues that comity concerns do not support Garrett's argument, because he "could have exhausted his denial of direct appeal and denial of counsel claims in a properly filed petition under" Rule 37, "before, or contemporaneously with, the filing of his motion for a belated direct appeal." Indeed, Arkansas has held

Wall's definition of "collateral review" encompasses statutory tolling for a motion for belated appeal. If meritorious, such a motion mandates review of the underlying conviction. And for Garrett, whose federal habeas claim is predicated exclusively on the denial of his right to take a direct appeal, the motion plainly sought a judicial review of the "pertinent judgment or claim." 28 U.S.C. § 2244(d)(2).

We reverse the judgment of the district court and remand Garrett's case for further proceedings.

STRAS, Circuit Judge, dissenting.

When an Arkansas prisoner files his direct appeal late and asks the court to consider it anyway, is the request an "application for . . . collateral review"? 28 U.S.C. § 2244(d)(2). The answer, as the question would suggest, is no.

I.

Harl Garrett had to file his federal habeas petition within one year of "the date on which the [state] judgment became final by . . . the expiration of the time for seeking [direct] review." *Id.* § 2244(d)(1)(A). Certain events can pause the clock, like a timeout in sports. Garrett claims that he called one when he filed a motion for belated appeal. *See* Ark. R. App. P.–Crim. 2(e) (2019). The question for us is whether the motion triggers "direct review," the end of which starts the one-year

that, to preserve state postconviction relief, an "appellant should have filed [a] Rule 37 petition within ninety days of his judgment of conviction despite the possibility that a motion for belated appeal might be filed." Shoemate v. State, 5 S.W.3d 446, 448 (Ark. 1999). But the State does not suggest that Garrett was prohibited from filing only a belated-appeal motion or filing one before a postconviction petition; nor does the State contest that under Arkansas law, Garrett's belated-appeal motion—whether or not accompanied by a Rule 37 petition—provided the state courts with authority to provide the relief Garrett now seeks in federal court.

clock, or "collateral review," which pauses it after it starts. 28 U.S.C. § 2244(d)(1)(A), (2). Only the latter would allow Garrett to beat the deadline by a few days.

## II.

The text provides the answer. *See Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). One way to pause the clock—what courts call tolling—is to file an "application for State post-conviction" relief. 28 U.S.C. § 2244(d)(2). Arkansas has a procedure for filing one, *see* Ark. R. Crim. P. 37.1(a), but the court and I agree that a belated-appeal motion is not it.

We part ways on the second possibility, whether it is an "application for . . . other collateral review." 28 U.S.C. § 2244(d)(2). "[C]ollateral review" consists of a "judicial *re*examination of a judgment or claim in a proceeding *outside* of the *direct review* process." *Wall v. Kholi*, 562 U.S. 545, 553 (2011) (emphasis added). For the court, the exception squeaks Garrett's petition across the line before the buzzer. In my view, it confirms that it had already sounded.

Any state-court judge knows that direct and collateral review provide different tracks. The typical order is that a trial and direct appeal come first, then collateral review. As the Supreme Court has explained, "something that is 'collateral' is 'indirect,'" separate "from the main review" process. *Id.* at 551–52 (citation omitted); *see id.* at 552 (comparing "collateral review" to "collateral attack," defined as an "attack on a judgment in a proceeding *other than a direct appeal*" (citation omitted)). We do not have to look far for an example: habeas corpus is itself a form of collateral review. *See id.* (noting that "[w]e have used the terms habeas corpus and 'collateral review' interchangeably"); *Teague v. Lane*, 489 U.S. 288, 306 (1989) (plurality opinion) ("Habeas corpus always has been a *collateral* remedy, providing an avenue for upsetting judgments that have become otherwise final." (citation omitted)).

-13-

The catch-all phrase, "other collateral review," 28 U.S.C. § 2244(d)(2), must refer to other forms of postconviction review that share the same basic characteristics. Otherwise, it would "ascrib[e] to [the] word[s] a meaning so broad that [they are] inconsistent with [their] accompanying words." *Yates v. United States*, 574 U.S. 528, 543 (2015) (plurality opinion) (citation omitted) (discussing the canon *noscitur a sociis*, "a word is known by the company it keeps"). To keep from "giving unintended breadth to" the words Congress used,[8] it must capture procedures that function the same way but go by a different name. *Id.* (citation omitted). Just like Arkansas's Rule 37 proceedings. *See* Ark. R. Crim. P. 37. Or perhaps coram nobis in states like Arkansas, Nebraska, and South Dakota. *See Howard v. State*, 403 S.W.3d 38, 42–43 (Ark. 2012) (explaining the requirements for seeking a writ of error coram nobis); *State v. El-Tabech*, 610 N.W.2d 737, 747–48 (Neb. 2000) (same); *Garcia v. State*, 843 N.W.2d 345, 348 (S.D. 2014) (same).

*Kholi* confirms this understanding. After the conclusion of direct review, the defendant there asked the court to "reconsider" the possibility of running his sentences concurrently rather than consecutively. *Kholi*, 562 U.S. at 548–49. The

---

[8]Getting the distinction right has implications beyond this case. Littered within the federal habeas statutes are references to both direct and collateral review, often in the same or adjoining provisions, so not blurring the line between the two is critical to their operation. *See* 28 U.S.C. § 2244(b)(2)(A) (requiring dismissal of a second-or-successive habeas claim unless it relies on "a new rule of constitutional law, made retroactive to cases on *collateral review* by the Supreme Court" (emphasis added)); *id.* §§ 2244(d)(1)(A), (C), 2255(f)(3) (recognizing that the limitation period runs from the latest of when the judgment becomes "final by the conclusion of *direct review*," or the Supreme Court makes a new rule "retroactively applicable to cases on *collateral review*" (emphasis added)); *id.* §§ 2254(e)(2)(A)(i), 2255(h)(2) (referencing a "new rule of constitutional law, made retroactive to cases on *collateral review* by the Supreme Court" (emphasis added)); *id.* § 2255(a), (b) (referring to a "*collateral* attack" (emphasis added)); *id.* § 2263(a) (requiring petitioners to seek habeas corpus review no later than 180 days after the "final State court affirmance of the conviction and sentence on *direct review*" (emphasis added)); *id.* § 2263(b)(1)–(2) (tolling the limitation period for petitions for certiorari filed to challenge a "final State court decision on *direct review*" and petitions for "post-conviction review or other *collateral* relief" (emphasis added)).

-14-

question was whether the Rhode Island-specific motion he used was an "application . . . for 'collateral review.'" *Id.* at 554–56 (discussing R.I. Super. Ct. R. Crim. Proc. 35). The answer was yes. It was collateral because consideration of the motion occurred "outside of the direct review process." *Id.* at 553. And it was a review because it called for "a judicial reexamination . . . with a view to amendment or improvement" through "correct[ion]" or "reduc[tion]" of his sentence. *Id.* at 553–54 (citations omitted).

## III.

This procedure looks nothing like that one. At most, a motion for a belated appeal is an "application" for reinstatement of "*direct* review," which is what Garrett would have received if it had been successful. *Id.* at 551–52 (emphasis added). Indeed, when the Supreme Court confronted a nearly identical Texas procedure for authorizing an "out-of-time appeal," it concluded that it "restore[d] the pendency of the direct appeal," rather than started "collateral review." *Jimenez*, 555 U.S. at 120–21 (alteration in original) (citation omitted). It "reset" the clock from the beginning, as opposed to stopping it. *Id.* at 120. Given that what is direct cannot be collateral, the same motion cannot do both. *See Kholi*, 562 U.S. at 552 (noting that collateral review stands "aside from" direct review (citation omitted)).

Even if it could, Garrett's belated-appeal motion still would not qualify as a "review" of a "pertinent judgment or claim." 28 U.S.C. § 2244(d)(2). Unlike the sentence-reduction motion in *Kholi*, which could result in a "correct[ion]" or "reduc[tion]" of the defendant's sentence, granting a belated-appeal motion does not "order *relief* from a judgment." 562 U.S. at 554, 556 n.4 (emphasis added) (citation omitted). It is a step in that direction, kind of like requesting instant-replay review. *See Danny v. Sec'y, Fla. Dep't of Corr.*, 811 F.3d 1301, 1304 (11th Cir. 2016). But just as a coach must follow the proper procedures and have challenges left to get it, *see, e.g.*, *2025 NFL Rulebook*, NFL Football Operations, Rule 15, § 1, art. 1, https://operations.nfl.com/the-rules/nfl-rulebook/#rule15, so must a belated-appeal applicant follow Arkansas's procedures and show good reason for the delay before

-15-

the actual review can begin, *see McDonald v. State*, 146 S.W.3d 883, 888–89 (Ark. 2004).

Habeas is not horseshoes. Close doesn't count. If it did, then the hypothetical postconviction discovery and appointed-counsel motions in *Kholi* should have qualified too. *See Kholi*, 562 U.S. at 556 n.4 (explaining that neither would); *see also Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204, 1216 (8th Cir. 2023) (explaining that "we are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings" (citation omitted)). After all, both are a step toward getting review, with the latter motion inviting the same type of cursory look at the merits that Garrett's belated-appeal motion purportedly does. *But cf. Blue v. Medeiros*, 913 F.3d 1, 7 (1st Cir. 2016) (explaining that "[e]ven [if] a judge must take a peek at the underlying claim to see if the merits are hopeless," there is no collateral review without "authority to either alter the judgment or change the sentence"). But none of these motions, neither the ones identified there nor Garrett's, is a "direct request[] for judicial review of a judgment" or "provide[s] a state court with authority to order relief from" one. *Kholi*, 562 U.S. at 556 n.4. It may get him closer, but it still falls short.

What little Arkansas courts have said about belated-appeal motions supports my view. *Dodson v. Norris*, upon which the court relies, says that filing one is "not part of the *ordinary* appellate review process" for exhausting state remedies before federal habeas review. 288 S.W.3d 662, 665 (Ark. 2008) (emphasis added); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999) (explaining that exhaustion requires "one complete round of the State's established appellate review process," but "state prisoners do not have to invoke extraordinary remedies"). Rather, it is what happens when a party "fail[s] to follow" it. *Dodson*, 288 S.W.3d at 665. Failing to follow the direct-review process, however, does not somehow transform a motion to reinstate it into an "application for . . . collateral review." 28 U.S.C. § 2244(d)(2). If anything, the discussion in *Dodson* strongly suggests that a belated-

-16-

appeal motion is neither "collateral" nor a "review," exactly the conclusions I would reach today.[9] *Id.*

IV.

Without a pause in the one-year clock, Garrett's habeas petition was untimely the moment he filed it. For that reason, the district court made the right call by dismissing it.

_____

---

[9]The court's concerns about comity are puzzling. After all, it is hard to see how comity favors cutting Garrett more slack for his federal habeas petition than he would have received in state court, where Rule 37 petitions must be filed "within ninety days of [a] judgment of conviction *despite* the possibility [of] a motion for belated appeal." *Shoemate v. State*, 5 S.W.3d 446, 448 (Ark. 1999) (emphasis added). Besides, although "comity, finality, and federalism" are no doubt important in the habeas context, *Williams v. Taylor*, 529 U.S. 420, 436 (2000), they cannot "trump the best interpretation of the statutory text," *Patel v. Garland*, 596 U.S. 328, 346 (2022). *See Jimenez*, 555 U.S. at 118 (recognizing that we enforce "plain" statutory text "according to its terms").